## SHOEMAKER'S CASE.

Cumberland.  Opinion, February 26, 1947.

*Raymond S. Oakes*, for petitioner.

*William B. Mahoney*,

*James R. Desmond*, for respondents.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MURCHIE, TOMPKINS, FELLOWS, JJ.

FELLOWS, J.   This case comes to the Law Court on appeal by Lucy V. Ridgwell Shoemaker. The decree of the Industrial Accident Commission having dismissed the petitioner's claim for further compensation, she here appeals from pro forma decree of the Superior Court affirming the order of dismissal.

The facts are these: On April 3, 1943, Lucy V. Ridgwell Shoemaker, in the employ of the New England Shipbuilding Corporation as a ship fitter's helper, was injured between two steel plates. On October 13, 1943 she filed with the Industrial Accident Commission a petition for award of compensation. The Commission by decree dated December 11, 1943 awarded compensation at the rate of $18.00 per week to commence June 28, 1943 and "to continue, subject to the provisions of the Workmen's Compensation Act, until modified or ended by subsequent approved agreement or commission decree." R. S. 1944, Chap. 26, Sec. 38. Compensation continued until January 9, 1945. On January 22, 1945 the respondents filed petition for review. Hearing was held March 7, 1945. The Commission, by its decree dated March 22, 1945, found that the employee's incapacity had materially diminished, and ordered compensation at $9.00 per week from January 9, 1945 to March 7, 1945.

The material portion of the decree of March 22, 1945 stated that:

"Compensation for total incapacity was ordered at the rate of $18.00 per week. In view of diminished incapacity, and with no evidence upon which to figure a rate of compensation for partial incapacity, we estimate that employee's condition from January 9, 1945 to March 7, 1945 entitles her to partial compensation at the rate of $9.00 per week. Any claim for compensation subsequent to March 7, 1945 should be based upon an attempted demonstration of earning capacity."

The Commission thus found "diminished incapacity." It did not find that incapacity had ended, but it did "suspend" the payments, and demanded "an attempted demonstration of earning capacity." No appeal was taken from this decree.

On June 11, 1945 the employee filed the pending petition for further compensation "on account of further incapacity," and by decree, dated March 14, 1946, this petition was dismissed. From this decree of March 14, 1946 the employee petitioner filed and perfected this appeal. The record before us, therefore, contains three decrees of the Commission,—the original decree of December 1943, the decree of March 1945, and this decree of March 1946.

The facts upon which the Commission based this pending decree of March 14, 1946 are stated in the decree as follows:

"The petitioner now claims that because of pain in her left leg, severe headaches, inability to walk, loss of sleep, and inability to do her house-work, the same complaints of which she testified to at the hearing of March 7, 1945, she is entitled to an Award of Further Compensation.

There appears to be no doubt but what the injury which the petitioner sustained on April 3, 1943, resulted in osteomyelitis of the left femur. She was operated upon for the correction of this condition by Dr. Henry W. Lamb in January, 1944.

On September 9, 1943, following her injury of April 3, 1943, this employee married, and has borne two children, one child having been born on November 18, 1944, the other some months subsequent to the hearing of March 7, 1945, when compensation was suspended.

On April 7, 1945, following the hearing of March 7, 1945, the petitioner, upon advice of Dr. Weeks, consulted Dr. Sullivan of the Pratt Diagnostic Hospital in Boston and as a result was given penicillium treatments by Dr. Lamb.

Dr. Lamb, the petitioner's own physician, who treated

her over a period of months, testifies that in his opinion she was not totally incapacitated for work as far back as January, 1945, as a result of her injury. He feels that she was able to do light work at that time and has not changed his opinion as to her ability to work since, as relates to her injury. He further testifies that the X-rays do not disclose any active osteomyelitis.

The only attempt to work for remuneration which the petitioner has made was on May 25, 1945, when she worked for a period of three or four hours for the National Biscuit Company and quit. We feel that this was not a fair trial of her ability to work, as related to her injury of April 3, 1943. It seems to us, from the evidence, that her physical condition at that time, not referable to her injury, might well have caused her to quit, if indeed she were incapacitated at that time.

Since the petitioner's complaints are the same as those of the hearing of March 7, 1945, at which time it was found by Commission decree that her incapacity to work had materially diminished as of January 9, 1945, and suspending compensation as of March 7, 1945; the failure on her part, as we view the case, to fairly demonstrate a real working incapacity referable to the injury of April 3, 1943, since said hearing; and the testimony of Dr. Lamb that in his opinion she has had a working capacity since January 1945; we find that the petitioner fails to sustain the burden of proving that she has been incapacitated for work as a result of her injury of April 3, 1943, over and above that for which she has already been compensated."

The original decree of December 11, 1943 had ordered compensation at $18.00 per week, and to continue until "modified or ended." It was diminished by the decree of March 22, 1945 to $9.00 per week to be paid from January 9, 1945 to March 7, 1945, and subsequently to be based on "Attempted demonstration of earning capacity."

The Commission decree of March 22, 1945 (which as stated above was not appealed from) finds a partial disability, but "suspends" the payments and improperly places the burden on the employee to make an "attempted demonstration" of her earning capacity. What an "attempted demonstration" might consist of is difficult, if not impossible, to understand. "The award is designed to compel her to do so to provide a yardstick for the accurate measurement of her partial incapacity." *St. Pierre's Case,* 142 Me., 145; 48 Atl. (2nd), 635, 636. In other words, the original decree of 1943 awarding $18 per week, the decree of 1945 awarding $9 from January to March, and this decree of 1946, all apparently recognize that more or less incapacity due to the accident exists; but this pending decree of 1946 does not attempt to "determine the actual earning ability," nor does the decree "end" payments. *St. Pierre's Case,* 142 Me., 145; 48 Atl. (2nd), 635, supra.

The aforementioned decree of March 22, 1945 was not appealed from, and no review of it may now be made. *Comer's Case,* 131 Me., 386, 163 A., 269; *Conners' Case,* 121 Me., 37; 115 A., 520; *Devoe's Case,* 131 Me., 452, 163 A., 789; *Lynch* v. *Jutras,* 136 Me., 18, 1 A., 2d, 221. The decree of March 22, 1945, however, recognizes a partial incapacity due to the accident. The door to further compensation was left open but left for the petitioner to make an "attempted demonstration" of her earning capacity. This additional and unnecessary portion of the decree of March 22, 1945, requiring "demonstration" of capacity, was void, because it was not authorized by statute, and beyond the power of the Commission to require. *St. Pierre's Case,* 142 Me., 145; 48 Atl. (2nd), 635, supra. In so far as it exceeded its statutory powers the decree was of no effect, and the failure to take an appeal would not validate. *Snow* v. *Russell,* 93 Me., 362, 376, 45 A., 305, 745 Am. St. Rep., 350. As stated in *St. Pierre's Case,* 142 Me., 145; 48 Atl. (2nd), 635, 637, supra:

"The requirement of the statute is that an employer

pay compensation to an injured employee during partial incapacity in the amount representing a percentage of the difference between his earnings before injury and what he is able to earn thereafter."

It is true that the decree of March 22, 1945, which reduced the payments and required "demonstration," was not appealed from, but it recognized incapacity still existing; and the decree in the pending appeal of March 14, 1946 recognizes *an* incapacity but dismisses the petition because the employee did not submit evidence of "a fair trial of her ability to work" to "fairly demonstrate a real working incapacity" as improperly required by the previous decree.

This decree of March 14, 1946 dismisses the pending petition because in the opinion of the Commission the petitioner does not furnish the "yardstick" to correctly measure the amount of her ability to work. See *St. Pierre's Case,* 142 Me., 145; 43 Atl. (2nd), 635, supra. The error of the Commissioner in the *St. Pierre's Case,* supra, was "in failing to find a fact essential to the proper disposal of the petition before him." *St. Pierre's Case,* 142 Me., 145; 48 Atl. (2nd), 635, 637, supra. So, in this case, the error of the Commissioner was that he did not determine the amount of incapacity, or "further" incapacity, if he intended to find incapacity. If, as a fact, there was no incapacity due to the accident, or no proof of "causal connection between the injury and the incapacity now claimed," he failed to make that finding. R. S. 1944, Chap. 26, Sections 12, 38; *St. Pierre's Case,* 142 Me., 145; 48 Atl. (2nd), 635, supra.

We do not discuss the evidence before the Commission. There was evidence on which the Commission could make findings of fact, and on which it did make certain findings. Willingness to work, the amount of work done, if any, and the diligence or lack of diligence in seeking and holding employment, may be elements for consideration by the Commission, but the duty of the Commission is to find whether or not there is incapacity due

to the accident. Has the employee "any capacity to earn, and if so, the extent of his disability due to his injury?" "The duty of the trier of facts in compensation cases is to determine the actual earning ability of the employee." *St. Pierre's Case,* 142 Me., 145; 48 Atl. (2nd), 635, supra; *Connelly's Case,* 122 Me., 289, 119 A., 664; R. S. 1944, Chap. 26, Sec. 38.

> *Appeal sustained.*
> *Decree of sitting Justice reversed.*
> *Case recommitted to the Industrial Accident Commission for further proceedings.*