WILFRED PELCHAT
*vs.*
PORTLAND BOX CO., INC.
AND
U. S. FIDELITY & GUARANTY CO.

Cumberland.    Opinion, June 8, 1959.

*Benjamin L. Berman,*
*John J. Flaherty,* for plaintiff.

*Forrest E. Richardson,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

WEBBER, J. The decree below confirming a decision of the Industrial Accident Commission has reduced the compensation of the appealing employee Pelchat. This action was taken on a petition for review filed by the employer and is based on a finding by the Commission that Pelchat's partial incapacity to work and earn wages has diminished to a present level of fifty per cent of his capacity prior to his accident. The issue is whether or not there was any evidence to support the finding.

The medical testimony supports a finding that the employee is sufficiently recovered from the injury to his foot so as to have at least fifty per cent of normal capacity and in particular to be able to perform "light work." It was strongly urged by medical witnesses that engaging in "light work" would benefit the employee's physical condition and would have therapeutic value. The medical witnesses were of opinion that the injured employee entertained a genuine but mistaken fear of actively using his foot and for that reason preferred to remain for the most part immobile with the foot elevated.

As illustrative of what was meant by "light work," the attending physician expressed the opinion that Mr. Pelchat could carry dry lumber weighing 15 to 20 pounds, but could not be expected to carry green lumber weighing about 85 pounds. The physician included as "light work" physical labor which would involve more use of the foot, walking and standing, even though some discomfort might be entailed, in order to improve both motion and circulation. He recognized some limitation in climbing ladders or walking on rough ground but in general felt that Mr. Pelchat could perform any type of work requiring standing, walking or

lifting. There was other medical testimony substantially to the same effect.

The petitioning employer offered no evidence of specific job opportunities or of the wages which might be earned from "light work." Following what has apparently become accepted practice, the Commission, having found a fifty per cent incapacity, applied this percentage to the original earning capacity in order to determine the rate of weekly compensation as fixed by statute. The employee, while conceding that there was medical evidence to support a finding of fifty per cent partial incapacity, contends that there was no evidence as to what work was available to him or what wages such work would produce. He therefore insists that the petitioner wholly failed to sustain its burden of proof.

A review of the cases suggests at once that any appearance of conflict is largely dissipated if we keep in mind the distinction between the burden of proof and the burden of going forward with evidence. We are satisfied that this was the distinction which our court had in mind in *Connelly's Case* (1923), 122 Me. 289. The language of the opinion has such direct bearing on the problem before us that we quote from it at length. In this case the employee had been receiving compensation on the basis of total incapacity. A petition for review brought by the insurance carrier was denied by the Commission on the ground that the employee still could not perform the same work which he was doing at the time he was injured, or even work of the same nature. In reversing the decision of the Commission, the court held that this was not the proper test and pointed out that the subsequent partial capacity to perform work and earn wages was not limited "to the same kind of employment in which he was engaged at the time of the injury." The Commission in its decree had pointed out that medical evidence had been submitted that the employee was sufficiently recovered to engage in some "light work," but

had noted that no evidence had been furnished showing the particular nature of any "light work" available to the employee, nor any evidence that the employer could or would furnish him with any such work. Quite significantly, we think, the state of the evidence as thus described closely and almost exactly parallels that before us in the instant case. After reiterating the rule which has always obtained in Maine that the burden of proof rests and remains upon the moving party to establish the grounds upon which his petition is based, Mr. Justice Wilson, speaking for an unanimous court, went on to say at page 292:

> "When a petitioner for review has shown an ability to do such work as is ordinarily available in the community in which the injured employee resides, and the kind of work suggested by the physician testifying in this case was 'driving a team or working around a place,' he has sustained the burden upon him as the moving party in a petition of the kind now before us. It then, we think, becomes the burden of the employee to meet this by showing he has used reasonable efforts to obtain such work and failed *by reason of his injury.* \* \* \*
>
> If he fails to use reasonable efforts to find work such as he could perform or insists that he could not perform it, if available, no burden rests upon the petitioner to offer him work or *to prove that some particular kind of work is available which he could perform.*" (Emphasis supplied.)

It is obvious that the court was here thinking of more than the petitioner's burden of proof. The opinion clearly indicates the nature of evidence which, when presented by the petitioner and accepted and believed by the factfinder, will cause the burden of going forward with contrary or offsetting evidence to shift to the adversary. If such contrary evidence is not forthcoming, both the petitioner's

burden of proof and his initial burden of going forward with evidence have been satisfied.

The court assumed correctly that the term "light work" as commonly used and understood and as illustrated by the medical witness is broad enough in scope to include many types of work "ordinarily available" in any community. The court saw no practical need for requiring the petitioning employer to parade before the Commission a procession of employment officers, personnel directors and others who may know of specific job openings which involve only "light work" and who can indicate the wages being offered therefor. If the employee has diligently and in good faith made reasonable efforts to find "light work," he is or should be in a better position than the petitioner to know whether there is anything available that he can do and what he could earn thereby. It is neither unreasonable nor unfair to allow the burden of going forward with evidence to shift to him, once the employer has made out what amounts to a prima facie case.

Applying the rule laid down in *Connelly's Case,* which we deem controlling here, to the facts of the instant case, we find that the petitioner offered evidence which obviously satisfied the Commission that the injured employee had at least a fifty per cent capacity to work and earn and that he could and should for his health's sake perform "light work." As illustrated by the medical witnesses, the term "light work" could by reasonable inference mean to the Commission any type of work requiring mental or physical activity or both so long as the work did not involve the climbing of ladders, frequent or constant walking on rough ground, or the pushing, pulling or lifting of heavy loads. To meet the burden of going forward with evidence which then devolved upon him, the employee described his own efforts to find employment. The Commission could very properly conclude that he had not made reasonable efforts in good faith

to secure employment. By his own admission he sought only a position in which he could work entirely or at least for the most part in a seated position with his leg elevated. The Commission could properly find that he thereby imposed an unnecessary and improper limitation upon his own employability and that his consequent failure to find "light work" was attributable not to his injury, but to his exaggerated concern for keeping his injured foot immobile. Upon the whole evidence, therefore, the Commission could properly conclude that the petitioning employer had sustained its burden of proof.

Other cases which have been called to our attention require only brief comment. In *Ray's Case* (1922), 122 Me. 108, 110, the court defined "incapacity for work" to include not merely want of physical ability to work but lack of opportunity to work, and permitted an employee to show in support of claimed "incapacity" a "general disinclination on the part of persons requiring help to employ maimed or crippled men when sound men are available." The employee in the instant case offered no such evidence. The opinion pointed out, however, that "loss of wages due to the workman's fault subsequent to the accident or to his illness not connected with the accident does not entitle him to greater compensation. The same is of course true of loss occasioned by general business depression."

*Milton's Case* (1923), 122 Me. 437, emphasized that the employer was under no obligation to furnish remunerative employment to the injured employee as a prerequisite to showing diminished incapacity.

*St. Pierre's Case* (1946), 142 Me. 145, supports the proposition that the burden of proof on a petition never shifts and cannot be made to do so by any artificial device or order of the Commission. In this case on a petition for review by the employer, the Commission terminated compen-

sation entirely and forced the employee to make sustained efforts to work, establish an earning capacity or lack of one, and *then file his own petition for compensation.* This in effect shifted the burden of proof (not to be confused with the burden of going forward with evidence) on a petition from employer to employee. The opinion further reaffirms the principle that in determining ability to earn, the Commission may properly consider the willingness of an employee *to return to work and his diligence in seeking employment,* or the lack of it. The court properly remanded the case to the Commission to determine on the basis of evidence not unlike that before us, the extent of partial incapacity.

In *Shoemaker's Case* (1947), 142 Me. 321, a petition of the employee for further compensation had been denied by the Commission for insufficient proof of the extent of diminished incapacity. The Commission, however, while apparently recognizing that some partial incapacity existed, had failed to determine the extent of it. Its reason for such a decision was that the employee had failed to submit evidence of "a fair trial of her ability to work" to "fairly demonstrate a *real working incapacity*" as erroneously ordered by the Commission upon a prior petition for review brought by the employer. The court followed *St. Pierre's Case, supra,* in pointing out the error on the first petition, and was critical of the Commission for adding to the normal burden of proof of the employee an artificially and improperly imposed "yardstick." The case was remanded to the Commission to determine as an essential fact either that there was no proven partial incapacity, or otherwise the extent of partial incapacity shown. It is only necessary here to note that the holding in *Shoemaker's Case* in no way conflicts with the basic rules set forth in *Connelly's Case, supra,* which we deem dispositive of the issues before us.

*Eleanora Gagnon's Case* (1949), 144 Me. 131, holds that where an accidental injury, which would not alone produce

total incapacity, does so in combination with a preexisting illness, the accident must be held responsible for total incapacity. That issue obviously bears no relation to the one before us. There was no evidence presented that the employee was able to perform any remunerative work whatever.

As already noted, we are satisfied on examination of the record before us and the law applicable thereto that there was sufficient evidence to support the finding and decision of the Commission fixing the extent of partial incapacity in terms of weekly compensation. The case has, however, raised issues of law of sufficient importance to warrant an allowance to the employee for costs and counsel fees to be paid by the petitioners pursuant to R. S., 1954, Chap. 31, Sec. 41. The entry will be

*Appeal denied. Decree below affirmed. Allowance of $250 ordered to respondent Pelchat for expenses of appeal.*