**Richard FECTEAU**

v.

**RICH VALE CONSTRUCTION, INC. &/or
St. Paul Fire Insurance Company.**

Supreme Judicial Court of Maine.

Dec. 12, 1975.

———◆———

Jolovitz & Niehoff by Lester T. Jolovitz, Waterville, for plaintiff.

Preti & Flaherty by Thomas A. Cox, Portland, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD, and DELAHANTY, JJ.

WERNICK, Justice.

This is an appeal by employer Rich Vale Construction, Inc. and its insurance carrier St. Paul Fire Insurance Company from a Superior Court judgment which affirmed, pro forma, a decree of the Industrial Accident Commission concerning a petition of the employer for review of incapacity filed, as amended, July 18, 1974. The Commission decided that compensation for partial incapacity be paid to the employee Richard Fecteau at the rate of $53.14 per week

"... as of July 30, 1974 ... to continue thereafter in accordance with the provisions of the Act and annual adjustments as provided by the Act."

The employee, now aged 39, has been a carpenter during most of his adult life. While engaged in carpentry work on a construction site he sustained a compensable injury to his right ankle for which he was being paid compensation for total incapacity under an approved agreement.

In January, 1974 the employee became physically able to do "light work" not involving climbing ladders or walking on rough or uneven ground. His physician advised him to undertake doing "some kind of light duty" for the purpose "at least ... to find out how much he can do" by trying to

"... walk around on a level floor and perhaps ... increase the time, duration of the time for walking, ...."

Accordingly, on June 28, 1974 the employee took a job as a janitor at a school, working a five day week, eight hours a day, for a salary of $90.00 per week. He has been at this janitorial job at all times here material. The duties, which included dusting and washing floors, trash disposal and other general janitorial maintenance work, required extensive walking, but the employee had opportunities for rest when necessary.

The employer asserts, as an initial contention on appeal, that the Commissioner erred in fixing the extent of the employee's partial incapacity in terms of weekly compensation on the basis that the employee's earnings at his janitorial job reflect the correct measure of the employee's current ability to earn (within the meaning of 39 M.R.S.A. § 55). This is claimed to be error of law, as lacking evi-

dentiary support, because the employee had failed to come forward with evidence that his reasonable efforts to obtain work had shown that the janitorial job was the highest income producing job, compatible with his limited physical ability to work, which was available to him. In support of this position the employer relies upon *Connelly's Case*, 122 Me. 289, 119 A. 664 (1923), as clarified in *Pelchat v. Portland Box Co., Inc., et al*, 155 Me. 226, 153 A.2d 615 (1959) and subsequently followed in *Pelletier v. Pinette*, Me., 259 A.2d 25 (1969), *Martel v. United States Gypsum Company*, Me., 329 A.2d 392 (1974) and *Dailey v. Pinecap, Inc., et al*, Me., 321 A. 2d 492 (1974).

In all of these prior decisions this Court had confronted a situation in which at the time the employer petitioned for review of the incapacity of the injured employee, the employee was not engaged in remunerative employment. The employer was claiming that, despite the employee's non-employment, his recovery of a partial physical ability to perform remunerative work justified an adjudication of partial, not total, incapacity.

The employer correctly states that our long accepted rule as to such circumstances is that once the employer has produced evidence warranting a Commission finding that the employee has regained a partial physical ability to do gainful work, to be entitled to an adjudication that he never-

theless remains totally incapacitated, the employee has

". . . the burden of going forward with proof that he had made reasonable efforts to obtain such work and had failed, . . . ." *Martel v. United States Gypsum Company, supra* (p. 396)

■ The instant situation, however, is markedly different. Here, the employee who has regained a limited physical ability to engage in gainful employment is in fact so employed and, therefore, no potential question of total incapacity exists. The only issue to be resolved is the extent of the employee's avowed partial incapacity in terms of weekly compensation.

Counsel have called to our attention no prior decision of this Court dealing with the allocations of the respective burdens of going forward with evidence in such context, and our own research has disclosed none.[1] We here address the subject for the first time.

■ When the employee who has recovered partial physical ability to perform remunerative work is in fact not thus employed at the time of the employer's petition for review of incapacity, *total* incapacity to earn remains a viable alternative of decision by virtue of the holdings of this Court in *Ray's Case*, 122 Me. 108, 119 A. 191 (1922); *Levesque v. Shorey*, Me., 286 A.2d 606 (1972); *Bolduc v. Pioneer*

---

1. In *Bowen v. Morin Brick Company*, Me., 259 A.2d 41 (1969) the employee had been totally incapacitated. Upon the employer's petition for review of incapacity, the Commissioner found that the employee had recovered a work capacity sufficient to require that " . . . he . . . attempt to return to his employment." (p. 42) Compensation was ordered terminated and thereafter the employee " . . . obtained work with an independent jobber as a motor equipment operator." (p. 42) After he had some experience at this job the employee concluded that " . . . he could work only about half time" (p. 42) and, for this reason, the *employee filed a petition for further compensation*. As the moving party, the *employee*

(rather than the employer, as is the case when the employer petitions for review of incapacity) had the ultimate burden of proof to show the extent of his partial incapacity in terms of weekly compensation. *Bowen v. Morin Brick Company*, therefore, lies outside the line of authorities presently pertinent.

*Levesque v. Shorey*, Me., 286 A.2d 606 (1972); *Bolduc v. Pioneer Plastics Corporation*, Me., 302 A.2d 577 (1973); *Overlock v. Eastern Fine Paper, Inc.*, Me., 314 A.2d 56 (1974); and *Foster v. Bath Iron Works Corporation*, Me., 317 A.2d 11 (1974) are likewise to be distinguished on this ground that all of them involved situations in which the employee was the moving party upon whom reposed the ultimate burden of proof.

*Plastics Corporation,* Me., 302 A.2d 577 (1973); *Overlock v. Eastern Fine Paper, Inc.,* Me., 314 A.2d 56 (1974); *Foster v. Bath Iron Works Corporation,* Me., 317 A.2d 11 (1974). These decisions establish that the employee's recovery of a partial physical ability to work does not, per se, fix the legal status of the employee as that of partial, rather than total, incapacity. When the employee is not gainfully employed, there must be further inquiry concerning the *reason* for such non-employment since, if there is an

". . . unavailability, in or near the community in which he lives, of the type of work commensurate with his limited capacity, and ability to perform services which are so limited in quality, dependability, or quantity that a reasonable stable market for them does not exist, . . ." See: *Levesque v. Shorey,* Me., 286 A.2d 606, 610, 611 (1972),

the injured employee continues to be totally incapacitated in legal contemplation notwithstanding his recovery of a partial physical ability to perform remunerative work.

Because in such situation the non-employment of the injured employee leaves the issue of total incapacity a rational alternative of decision, our prior decisions, above cited, have promulgated the rule that once the employer petitioning for review of incapacity has made a showing warranting a finding that the employee has recovered a partial physical ability to engage in gainful work, the employer has made a prima facie case for partial, rather than total, incapacity. If the employee would have an adjudication of total incapacity, the employee then has the burden to go forward with evidence that

"he had made reasonable efforts to obtain . . . work [within the limited physical ability to work] and had failed, either because such work was unavaila-

ble in the area or . . . was unavailable to *him* by reason of his injury." *Martel v. United States Gypsum Company,* Me., 329 A.2d 392, 396 (1974)

The rationale of this approach, directed as it is to the evaluation of whether total incapacity remains a viable alternative of decision, is stated in *Pelchat v. Portland Box Co., Inc., supra.* There is

". . . no practical need for requiring the petitioning employer to parade before the Commission a procession of employment officers, personnel directors and others who may know of specific job openings which involve only 'light work' and who can indicate the wages being offered therefor. If the employee has diligently and in good faith made reasonable efforts to find 'light work', he is or should be in a better position than the petitioner to know whether there is anything available that he can do and what he could earn thereby. It is neither unreasonable nor unfair to allow the burden of going forward with evidence to shift to him, once the employer has made out what amounts to a prima facie case [that the employee has recovered a partial physical ability to engage in remunerative work]." *Pelchat v. Portland Box Co., Inc.,* 155 Me. 226, 230, 153 A.2d 615, 618 (1959)

This reasoning, however, is inappropriate to the present context. Here, precisely because the injured employee has already undertaken gainful employment his legal status as partially, rather than totally, incapacitated is definitively settled; the only question rationally open for decision is the extent of the partial incapacity in terms of weekly compensation. In such circumstances the employee's actual performing of remunerative work gives adequate prima facie indication of the extent of his present ability to earn wages since, to revert to the language of *Pelchat, supra,* the employee has made *actual* use of his

". . . better position . . . to know whether there is anything available that he can do and what he could earn thereby." (p. 230, 153 A.2d p. 618)

We deem, therefore, both unreasonable and unfair the position for which the employer here contends:—that notwithstanding that it is shown that the employee is working and earning substantial wages, the employee has a further burden to come forward with evidence that reasonable efforts by him to obtain work have shown the job at which he is in fact working to be the most productive employment available to him. We decide that since the ultimate burden of proof to establish the extent of partial incapacity is upon the employer who has petitioned for a review of incapacity, in the situation now before us the job at which the injured employee is in fact working and the income it produces provide a legally sufficient basis to support a Commission determination as to the extent of partial incapacity in terms of weekly compensation. If the employer who is petitioning for review would have it otherwise, it is for such petitioning employer, as incident of the discharge of his ultimate burden to prove the extent of partial incapacity in terms of weekly compensation, to come forward with evidence that regular employment paying wages higher than those being earned by the employee, and compatible with the employee's limited physical ability to work, was reasonably available to the employee.

The employer asserts as a second point on appeal, that even with the law as to respective burdens of coming forward with evidence established as aforesaid, the instant record provides the evidence necessary to the employer's discharge of its ultimate burden of proof and, therefore, the decision of the Commissioner must be reversed.

The employer points to the testimony of the employee that before he had taken his janitorial job, he had applied for a job at the Vigue Lumber Yard involving cabinet shop work paying $115.00 per week but found the job then filled by another person. Several months later, the employee learned that the Vigue Lumber Yard job was again open, but because he

". . . had a job already . . . [he] didn't bother about . . . [the Vigue Lumber Yard] job."

The nature and extent of partial disability are

". . . questions of fact upon which the finding of the Commissioner is final if there is any credible competent evidence to support it." *Bolduc v. Pioneer Plastics Corporation*, Me., 302 A.2d 577, 580 (1973)

In light of the employee's proven success over many months in his janitorial position, it was rational for the Commissioner to reason that balanced against the established compatibility of the janitorial position with the injured employee's physical ability to engage in gainful work, the potential that a job at the Vigue Lumber Yard could eventuate as similarly compatible, if tested, was too speculative a consideration and involved too much risk to the employee— even were it to appear that the employee could really have had the Vigue Lumber Yard job,—to warrant a finding that the employee acted unreasonably in remaining content with his janitorial job and failing to pursue the job opening at Vigue Lumber Yard. Since it was rationally open to the Commissioner to make such evaluation of the facts, the Commissioner's decision that the employee's current ability to earn should be fixed on the basis of the earnings of his current janitorial employment was a legitimate finding of fact, here conclusive.

The employer asserts, as a third point of appeal, that the Commissioner's decision must be reversed because the Commissioner made a finding that the employee must

". . . avoid . . . prolonged walking or standing . . .", a finding said to be without any support in the evidence and thus an error of law. The error, argues the employer, was not harmless. It may have affected the Commissioner's evaluation of the legal significance to be attributed to the employee's failure to follow up the job opportunity at the Vigue Lumber Yard because it may have induced the Commissioner to believe that the Vigue Lumber Yard job required "prolonged walking or standing" and was, therefore, incompatible with limitations of the employee's physical ability to work (as erroneously found to exist).

We disagree with the premise of the argument. We find the Commissioner's finding that the employee "should avoid . . . prolonged walking or standing" supported by the evidence. The physician who treated the employee was questioned as to the employee's condition as of January 21, 1974 and concerning which the physician had also testified that there had been "no improvement" as of April 18, 1974. This testimony was:

"Q . . . what he could do in the way of activity?

"A Well, it pretty much depends on how his subjective feeling about it. I thought that he could walk around on a level floor and perhaps he can really increase the time, duration of the time for walking, . . . ."

\* \* \* \* \* \*

"COMMISSIONER: Do you place any limitation as to the length or duration of walking, Doctor?

"WITNESS: Well, . . . I thought that he can start off about an hour or two steady and see how much he can do.

"COMMISSIONER: It all depends when he experiences pain or not?

"WITNESS: That's right.

"COMMISSIONER: How about any prolonged standing?

"WITNESS: I think it stands about the same way.

"COMMISSIONER: Same?

"WITNESS: Yes."

The physician further testified that the employee had limitation in the ankle's range of motion with

"dorsiflexion . . . about 15 degrees and plantar flexion . . . 40 degrees."

Although such restriction would not ". . . really change . . . normal gait pattern", the doctor observed that the employee was in fact "limping" because of pain.

Such direct medical testimony, and the reasonable inference the Commissioner was authorized to draw from it, *Willette v. Statler Tissue Corp.*, Me., 331 A.2d 365 (1975); *Soucy v. Fraser Paper, Limited*, Me., 267 A.2d 919 (1970)—that at all times here material prolonged standing or walking was likely to produce pain causing the employee to limp—supported the Commissioner's ultimate finding that, as of April 18, 1974, the employee "should avoid . . . prolonged walking or standing."

The entry is:

*Appeal denied.*

*Ordered that an allowance of $350.00 to cover fees and expenses of counsel be paid by the Appellants to the Appellee.*

All Justices concurring.