Armand J. ROY

v.

SANBORN'S MOTOR EXPRESS, INC.
and/or Liberty Mutual
Insurance Company.

Supreme Judicial Court of Maine.

Sept. 28, 1977.

1159

Preti & Flaherty by Robert E. Burns, Keith A. Powers, Portland, for plaintiff.

Richardson, Hildreth, Tyler & Troubh by Ronald D. Russell, Robert E. Noonan, Portland, for defendants.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY, and GODFREY, JJ.

WERNICK, Justice.

This case requires us to evaluate for the first time the import of 39 M.R.S.A. § 66–A enacted in 1971 (P.L.1971, Chap. 417).[1] More specifically, our concern is with the

1. The statute reads:

"Where an employee has suffered a compensable injury which disables him from performing his customary or most recent work, his employer at the time of such injury shall transfer him to work suitable to his physical condition where such work is available, during the time that the employee is subjected to medical treatment or rehabilitation, or both, and until such treatment is discontinued on the advice of the physician conducting the same or of the therapist in charge of the rehabilitation program or until the employee has reached the maximum level of rehabilitation for such worker in the judgment of the commission under all of the circumstances, whichever period is the longest. The commission shall, after making due inquiry, upon the request of an employee claiming to be unable to perform his customary or most recent work because of physical incapacity resulting from an injury or disease, require that the injured workman be removed from work detrimental to his health and be assigned to other work in the employer's establishment, if available. The exercise of this authority shall not conflict with any provision of a collective bargaining agreement between such employer and a labor organization which is the collective bargaining representative of the unit of which the injured workman is a part, if such agreement grants the injured employee greater rights than are provided in this section."

first sentence of the statute—in particular to ascertain the legislative intendment of the words, "where such work is available."

On December 9, 1974, Armand J. Roy suffered a compensable injury while working in the employ of Sanborn's Motor Express, Inc. (Sanborn). By agreement, Roy was being paid compensation for total incapacity. On July 10, 1975, Sanborn filed a petition for review of Roy's incapacity. While that petition was pending, Roy, on November 19, 1975, filed a petition to have the Industrial Accident Commission order Sanborn to comply with its obligation under 39 M.R.S.A. § 66–A by transferring Roy to "work suitable to his physical condition", Roy's claim being that ". . . such work is available" at the Sanborn plant.

After finding that Roy had suffered a compensable injury which disabled him from performing his customary work and that he continues to be subjected to medical treatment, the Commission decided the petition for transfer in Roy's favor. The Commission held that evidence showed that ". . . with some reasonable degree of imagination and consideration for . . . [the] employee, work could be made available to him."
In the opinion of the Commission this was sufficient to establish the presence of the statutory element, "where such work is available."

Using this decision on Roy's petition for transfer as its foundation, the Commission thereafter, on April 22, 1976, ruled on Sanborn's petition for review of Roy's incapacity. It (1) incorporated the finding of fact which underlay its March 25, 1976 decree on Roy's petition to transfer, that Roy

"has sufficient work capacity to justify . . . [his] making an effort to perform suitable work during a period of rehabilitation . . ."
and (2) ordered that

"compensation . . . be paid to the employee until such time as he begins to try to do the suitable work during the period of rehabilitation pursuant to the decree of March 25, 1976, and at varying rates during his efforts under that decree."

In effect, this decision required payment to Roy of compensation for total incapacity at least until such time as Sanborn transferred Roy to the work suitable to Roy's physical condition which the Commission had found "available" at Sanborn's plant.

Sanborn has appealed from the Superior Court judgment entered "pro forma" on each of the Commission's decrees, and the appeals have been consolidated before this Court.

We sustain Sanborn's appeal as to each of the pro forma judgments entered on the Commission's decrees and decide that both Roy's petition for transfer to suitable work and Sanborn's petition for review of Roy's incapacity must be remanded to the Commission for further proceedings, as hereinafter more fully explained.

We agree with Sanborn's contention on appeal that the Commission erroneously conceived the meaning of the requirement upon which Sanborn's obligation to transfer Roy to "suitable" work is preconditioned:— that ". . . such work is available."

Apparently acknowledging that if, in ordinary course, Roy, as a member of the general public, had applied to Sanborn for "work suitable to his physical condition", it could justifiably be said in such context that there was no "such work . . . available" at the Sanborn plant, the Commission read the concept "work . . . available", as utilized in Section 66–A, to impose upon the employer (when the other particular circumstances of Section 66–A obtain) the extraordinary duty to give "consideration" to an injured employee and use ". . . some reasonable degree of imagination" so that work suitable to the injured employee's physical condition "*could be made* available to him." (emphasis supplied)

■ While we find correct the Commission's general premise that the Legislature intended some kind of favoring of an injured employee in the circumstances delineated in Section 66–A, we disagree with the Commission's view of the particular method

of achieving it. We cannot read the textual language of Section 66–A, even as infused with the spirit of the objective facially manifested in the statute,[2] to require the employer to use a reasonable degree of imagination to create a job for the injured employee which does not exist under the standard work operations of the employer's business or would not be open to be filled by an ordinary applicant for work. In our view the words, "transfer . . . to work . . . where such work is available", strongly suggest a job actually existing under the employer's standard organizational structure. Had the Legislature intended the Commission's conception, the Legislature could easily have provided for it by use of ordinary words which expressly and directly make the point, such as:

> "transfer . . . [the injured employee] to work suitable to his physical condition where such work . . . [can reasonably be made] available."

That the Legislature wrote the statute using the word, "is", instead of the words above bracketed, "can reasonably be made", affords cogent reason to reject the Commission's view.

This natural import of the textual language tends to be confirmed by more general policy considerations. In the absence of legislative language plainly and expressly mandating it, a Court should be hesitant to confer upon the Commission the kind of power to investigate, interfere with, and regulate the internal management of an employer's business which we discern as a necessary concomitant of the approach asserted by the Commission.

■ In our view the favoring of an injured employee intended by the Legislature in Section 66–A, as a means of assisting in his continuing treatment, or rehabilitation, or both, is sufficiently accomplished by interpreting the statute to provide that during the time that the injured employee is subjected to medical treatment, or rehabilitation, or both, he shall have *first call* on

any job "suitable to his physical condition" which actually exists, or becomes open to be filled, under the standard organizational structure of the employer's operations; the injured employee must have the opportunity to take such job before the employer allows any one else to fill it.

■ The Commission therefore committed error by deciding the employee's petition for transfer through application of an incorrect legal standard.

The question remaining is whether application to the evidence of record of the correct meaning of the work—"available" element of Section 66–A establishes as a matter of law that Roy's petition for transfer must be denied, or leaves open factual issues necessitating remand to the Commission for further fact-finding. In the resolution of this issue it will be of benefit that we discuss the respective burdens borne by the injured employee and the employer as to proof of the facts constituting the elements of Section 66–A.

■ Counsel for the injured employee and the employer are in agreement, and we concur in their view, that: (1) Section 66–A contemplates that when an injured employee is claiming that his employer is in violation of Section 66–A, he brings the adjudicatory powers of the Commission to bear by filing a petition for transfer with the Commission; and (2) since the injured employee must thus become the moving party, in accordance with usual principles he must bear the ultimate burden of proof concerning each of the elements specified in Section 66–A as giving rise to the employer's obligation "to transfer."

■ From this, however, it does not follow that the injured employee must also bear the burden of going forward with evidence as to *all* of these elements. We hold that once the injured employee produces evidence sufficient to authorize Commission conclusions that (1) he suffered a "compensable injury which disables him from per-

---

**2.** There is no legislative history to suggest any legislative purposes other than those indicated by the face of the statute.

forming his customary or most recent work", (2) his physical condition enables him to perform some particular kinds of work, and (3) he is "subjected to medical treatment or rehabilitation, or both" which will continue for some period of time, the injured employee has established enough to require the employer, if he would disclaim violation of his duty under Section 66–A, to come forward with evidence concerning the element of the "availability" of work "suitable to . . . [the] physical condition" of the injured employee.

The general nature of employer-employee relationships is such that ordinarily an employee will not have adequate, or accurate, information about the management and organizational structure of the employer's business. It is, therefore, appropriate that we adapt to the reversed, but parallel, circumstances of the instant context the approach we took in *Pelchat v. Portland Box Co., Inc. et al.*, 155 Me. 226, 153 A.2d 615 (1959) and decide that since the employer

"... is or should be in a better position . . . to know whether [work suitable to the injured employee's physical condition] . . . is . . . available . . .",

"[i]t is neither unreasonable nor unfair to allow the burden of going forward with evidence to shift to . . . [the employer], once the . . . [injured employee] has made out what amounts to a prima facie case." (p. 230 of 155 Me., p. 618 of 153 A.2d.)

■ Plainly, here, the evidence produced by the injured employee sufficiently made his prima facie case since it showed: (1) a "compensable injury which disables him from performing his customary or most recent work"; (2) the kind of work suitable to the injured employee's physical condition and (3) his continuing subjection to medical treatment, or rehabilitation, or both.

With the work-available issue in this posture, the employer saw fit to offer no evidence on the issue in the form of its own records or the testimony of its management personnel as to its internal management and organizational structure in relation to job-availability or job-potential. Instead, the employer seemed content to let the matter rest on the basis of testimony given by the employee in which the employee seemed to agree that the employer could provide work for him only by creating a job.

We therefore confront the issue whether, and to what extent, answers given by the employee may be deemed evidence adequate to discharge the burden of the employer to come forward with evidence of job-availability.

We grounded our analysis justifying imposition of such burden upon the employer on the view that the employee cannot, in usual course, be expected to have reliable and definitive knowledge of the employer's internal management or organizational structure. In effect, therefore, we deemed the employee to be, in general, unqualified to give testimony about the matters critical to the issue of job-availability, as dependent on the employer's internal management structure, prerogatives and policies. We would be contradicting this foundational conception should we hold that in the instant situation the testimony of the employee as to job-availability was admissible without a preliminary investigation by the presiding Commissioner of the sources and basis of the employee's knowledge and a preliminary determination by the Commissioner that in this particular instance the employee was in fact in a position to have reliable and definitive information about the employer's internal management and organizational structure and functioning.

In accordance with the legal principles herein enunciated as controlling, then, we must conclude: (1) the decision of the Commissioner was based on incorrect legal principles and (2) application of the correct legal principles to the record before us does not warrant a decision in favor of, or against, the petitioner *as a matter of law*. Important questions of fact remain to be determined, bearing, in particular, on whether the employee was qualified to testify concerning the internal structure and functioning of the employer as to matters

involving management considerations, and, if he was qualified at all, to what extent his qualifications affected the scope of the testimony he should be allowed to give. We must therefore remand the employee's petition for transfer for further consideration by the Commission in light of this opinion.

Furthermore, since the correct legal principles here controlling are now being explained for the first time, we believe that in fairness to the employee, the employer and the Commission the issues should be dealt with on an evidentiary record more complete than the one before us. We, therefore, authorize in the further proceedings to be conducted on remand the taking out of such additional evidence as the parties and the Commission may deem appropriate to allow adequate resolution of the employee's petition for transfer in view of all the governing principles herein propounded.

■ Our decision as to the employee's petition for transfer requires that we also remand for reconsideration by the Commission the employer's petition for review of incapacity. The Commission decided that petition on the premise that it had correctly decided the employee's petition for transfer in favor of the employee. Our decision herein has rejected the correctness of that result, and it could be that, on reconsideration, the Commission will arrive at a decision contrary to that previously made. Since the premise on which the Commission here decided the employer's petition for review is no longer valid, the Commission should reconsider the employer's petition for review of incapacity in the light of the decision it may reach, after reconsideration, on the employee's petition for transfer.

The entry is:

Appeal sustained;

Pro forma decrees of the Superior Court vacated;

The employee's petition for transfer to suitable work, and the employer's petition for review of incapacity, are remanded to the Commission for further consideration in light of the opinion herein.

It is further ordered that the Appellants pay to the Appellee an allowance of $550.00 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal.

All Justices concur.