### Henry COTY

v.

### TOWN OF MILLINOCKET and/or Commercial Union Assurance Companies.

Supreme Judicial Court of Maine.

Sept. 29, 1978.

Gross, Minsky, Mogul & Singal, P. A., by George Z. Singal (orally), David C. King, Bangor, for plaintiff.

Mitchell, Ballou & Keith by John W. Ballou (orally), James E. Mitchell, Bangor, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.[1]

On September 18, 1973 Henry Coty, while employed as a laborer by the Town of Millinocket, sustained a compensable injury when the sides of the trench in which he was working collapsed, with the result that he fractured the tibial plateau of his right knee. He received compensation benefits for total incapacity at the rate of $77.70 per week until February 11, 1974, when he returned to work for the Town of Millinocket and compensation benefits were terminated by agreement of the parties.

On April 7, 1975 Coty filed with the Commission a petition dated March 27, 1975 in which he sought further compensation, claiming that, as a result of his leg injury, he had become totally incapacitated for work as of July 17, 1974, notwithstanding he had worked for the Town from that date to the time he petitioned for further com-

---

1. Mr. Justice Dufresne sat at oral argument and participated in consultation while he was Chief Justice, and, on order of his successor, Mr. Chief Justice McKusick, was empowered and authorized to continue his participation in the case in his capacity of Active Retired Justice.

pensation based on total incapacity. A first hearing was held at Bangor on July 16, 1975 at which the Commissioner received the testimony of Doctor Dale C. Bouton, an orthopedic surgeon whose qualifications were conceded and of the petitioner himself. On the fifteenth of August following the reference hearing, Coty was discharged from his job by the Town. He then filed with the Commission a second petition dated August 17, 1975 seeking, as he did in his petition dated March 27, 1975, identical relief, i. e. compensation benefits for total incapacity as of July 17, 1974. Another hearing was held at Millinocket on September 10, 1975, at which Coty testified, as well as Peter Pikelis, Public Works Director for the Town of Millinocket. The Commissioner dismissed Coty's two petitions on December 30, 1975. The Superior Court affirmed the Industrial Accident Commission decree from which a timely appeal to this Court was taken.

We sustain the appeal.

The testimony relating to the petitioner's claim of total disability may be fairly summarized in the following manner. Coty testified that his discharge by the Town was the result of his inability to perform all of the work assigned to him. He stated that, when he attempted to perform work involving long periods of standing, such as shoveling or picking paper off the streets, he would experience a severe pain in his injured right knee and that was the reason why he did refuse to do certain work assigned to him. He was willing at all times to do work which he was capable of performing. He did admit that he could operate the lawn mower for the Town in the summer and operate the wing on the town plow in the winter, as these were sitting down jobs. That the petitioner had a physical impairment was generally confirmed by Dr. Bouton, the only expert medical witness to testify. After several examinations, Dr. Bouton concluded on April 29, 1975 that Coty was partially disabled due to irregularities on the underside of his right kneecap; the petitioner could perform restricted work, but he would have difficulty with jobs requiring long periods of standing.

His previous diagnosis was reconfirmed in his last examination of Coty on May 21, 1975.

The doctor testified:

"He was having pain around his knee with weight bearing, most of which I felt, and I was pretty definite about it, was from the irregularities, the irritation on the underside of his kneecap. He was working short time. He had to take off two or three days at a time sometimes because of pain and swelling. I advised some indocin which is an anti-inflammatory agent which helps many of them sometimes, sometimes it doesn't help them at all. That's the last time I saw him—5/21/75, and at that time I felt that this boy should not be doing pick and shovel, jack hammer, and the best thing they could do for him was to find him some other type of a job where it didn't put the strain on his knee. He still had the partial disability. It had not changed. He was going to have it. He probably will have it as he gets older and possibly when he gets to be my age, he will possibly have to have a patella replacement done.

Q. "Is it consistent with the condition of the knee that he would have pain with pick and shovel work, bending and picking up things off the ground, this irregularity?

A. "Definitely, very consistent with it. Because every time he has flexion and extension of his knee and this long weight bearing, he was irritating the knee joint itself because of the irregularities and the excursion of the patella up and down with flexion and extension."

Coty testified also that he looked for light work in the area, visiting seven or eight different potential employers, including Great Northern Paper Company, to no avail. At the unemployment office, he was told they did not have light work for him.

The situation presented by the Commissioner's decree is perplexing. First, he recites the evidence:

"There is no definite evidence as to the number of days actually lost from work in 1974, because of the injury. The average weekly earnings during that year were $110.38.

"There is evidence in the form of a list agreed upon by the parties which shows the dates that Mr. Coty was off work during 1975. These days total thirty-two, ten of them are full days and twenty-two are part days. Mr. Coty said that these days were lost because knee pain prevented him from doing certain work assigned to him. The average weekly wages paid to Mr. Coty by the town of Millinocket during 1975 were $112.13.

"Mr. Coty was examined in May 1975 by Dr. Dale C. Bouton, M.D. an orthopedist. It was Dr. Bouton's opinion then that there was some knee pain caused by irregularities under the patella, and that probably, at that time Mr. Coty would have difficulty on a job which would involve prolonged standing.

"There was testimony from Peter Pikelis, the Public Works Director for the Town of Millinocket, that during 1975 Mr. Coty refused certain work because he considered it to be too strenuous for his knee. Mr. Pikelis also testified that Mr. Coty accepted work on heavy machinery which he liked to do which seemed to be more strenuous than the work of picking up paper along the streets which he refused."

Then, the Commissioner concludes:

"Mr. Coty has been awarded unemployment compensation effective August 15, 1975.

"*We are not convinced by the evidence that since July 1974 Mr. Coty's work capacity has been diminished to any significant degree by his leg injury.*

"His average weekly earnings during 1974 and 1975 were only slightly less than the average during the year prior to his injury. In addition, the evidence is conflicting and leaves doubt as to the reason Mr. Coty didn't work on the days that he was off during 1975.

"The petition is hereby dismissed." (Emphasis added).

Once again, we are faced with a decree that lacks specific findings, a situation which we have deplored many times in the past. See *Dufault v. Midland-Ross of Canada, Ltd.,* Me., 380 A.2d 200, 203 (1977); *Overlock v. Eastern Fine Paper, Inc.,* Me., 314 A.2d 56, 57 (1974); *Bolduc v. Pioneer Plastics Corporation,* Me., 302 A.2d 577, 579 (1973).

As appears in this case, Coty had resumed his former employment on February 11, 1974, and continued therein until his discharge on August 15, 1975. Where the employee has regained sufficient physical ability to engage in gainful employment and is in fact so employed, there is no potential question of the existence of total incapacity. The only issue to be resolved under such circumstances on his petition for further compensation is the extent of the employee's partial incapacity, if any, in terms of weekly compensation. See *Fecteau v. Rich Vale Construction, Inc.,* Me., 349 A.2d 162, 164 (1975).

If the employee is unemployed in fact at the time of his petition for further compensation, total incapacity to earn is a viable issue, even though he may have recovered partial physical ability to perform remunerative work.

In both instances, the employee as the moving party has the burden of proof of the extent of his disability. *Levesque v. Shorey,* Me., 286 A.2d 606 (1972); *Bolduc v. Pioneer Plastics Corporation,* supra; *Overlock v. Eastern Fine Paper, Inc.,* supra; *Foster v. Bath Iron Works Corporation,* Me., 317 A.2d 11 (1974).

At the time of his second petition, Coty was unemployed and the record shows that it was agreed his rights under that petition would be adjudicated in the then pending case.

Even though the Commissioner should find that the employee is not entitled to compensation for total incapacity, nevertheless, the employee may be awarded compensation for partial incapacity if his

capacity to earn has been impaired as a result of his work related injury. *McQuade v. Vahlsing, Inc.,* Me., 377 A.2d 469, 471 (1977).

The decree lacks specificity in the following particulars. Although the Commissioner does point to Dr. Bouton's testimony to the effect "that there was some knee pain caused by irregularities under the patella and that *probably* at that time [May 21, 1975] Mr. Coty would have difficulty on a job which would involve prolonged standing" (emphasis provided), nowhere does he discredit the testimony of the doctor who was the only expert witness in the case. Secondly, the Commissioner makes no finding at all in relation to Coty's work capacity in July 1974, medically or otherwise, his starting point from which he states that "[w]e are not convinced by the evidence that since July 1974, Mr. Coty's work capacity has been diminished to any significant degree by his leg injury." Thirdly, the Commissioner, though casting doubt on the petitioner's given reasons for missing work in 1975, does not mention the stated absences during 1974. Fourthly, the Commissioner's ruling completely ignores the status of the petitioner, who was unemployed at the time of his second petition. No specific finding was made that Coty at that time was neither totally nor partially incapacitated to engage in remunerative employment. Fifthly, the decree does not disclose, whether the Commissioner considered the good faith effort made by the petitioner to find other employment within his capacity, should he find that Coty was only partially disabled in the medical sense.

■ Coty would not be entitled to compensation for total incapacity if he were only partially disabled in the medical sense, unless he sustained his burden of showing . . . that he has engaged in a good faith effort to obtain work within the tolerance of his physical condition, and . . . that he failed in his effort, either because employers in his community would not hire people with such a limited capacity to do the type of work within his tolerance, or because there was no reasonably stable market in his community for that restricted work of which he was capable.

*Bowen v. Maplewood Packing Co.,* Me., 366 A.2d 1116, 1119 (1976); *Theriault v. Walsh Construction Company,* Me., 389 A.2d 317 (1978).

■ Lastly, as an integral part of his decree, the Commissioner finds as a fact that "Mr. Coty has been awarded unemployment compensation effective August 15, 1975," the day his employment with the Town of Millinocket was terminated. This finding of fact has no scintilla of evidence in the record to support it and nothing in the decree indicates what part this extraneous matter may have played in the Commissioner's ultimate decision.[2] The Commissioner's apparent use of factual matter not in evidence nor made part of the record constitutes error plainly warranting reversal. *Crosby v. Grandview Nursing Home,* Me., 290 A.2d 375, 381 (1972).

■ The Commissioner's failure to make specific findings of fact in the instant case and his consideration of the fact that the petitioner allegedly received unemployment compensation from the date of his discharge leave this Court in the position that we are unable to determine whether the Commissioner applied proper principles of law.

■ In the situation of the instant case in which the language of the Commissioner's decree manifests either confusion or misunderstanding on his part of the legal principles applicable to the case, and in which the Commissioner's reasoning process by which he reached his ultimate legal conclusion indicates that factual matter outside the record probably influenced the end result in a material way, justice may require that the Commission reevaluation of Coty's case shall not be confined to the record already made but should be upon a record amplified by additional evidence to be adduced through further hearing. See *Jus-*

---

**2.** But see *Page v. General Electric Company,* Me., 391 A.2d 303 (1978).

tard v. Oxford Paper Co., Me., 328 A.2d 127, 130 (1974); Richardson v. Robbins Lumber, Inc., Me., 379 A.2d 380 (1977).

The entry will be

Appeal sustained.

Judgment of the Superior Court vacated.

Remanded to the Workers' Compensation Commission[3] for further proceedings consistent with the opinion herein, including the hearing of further testimony if either party should so request or the Commission should find it necessary.

Further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550, together with his reasonable out-of-pocket expenses for this appeal.

---

**3.** Formerly the Industrial Accident Commission. For change of name statute, see Public Laws, 1978, c. 612.