**Henry COTY**

v.

**TOWN OF MILLINOCKET and Commercial Union Assurance Companies.**

Supreme Judicial Court of Maine.

Argued Sept. 5, 1980.

Decided Dec. 11, 1980.

Gross, Minsky, Mogul & Singal, P. A., George Z. Singal (orally), David C. King, Bangor, for plaintiff.

Mitchell & Stearns, Kevin M. Cuddy (orally), Bangor, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

McKUSICK, Chief Justice.

For the third time the employee, Henry Coty, is before this court as an appellant in a workers' compensation case resulting from a 1973 injury to his leg. In its most recent decree, the Workers' Compensation Commission denied the employee's petition seeking further compensation for two periods covering most of 1975. Since we conclude that the commissioner's response to counsel's request for findings of fact was inadequate to justify his decision against the employee, we sustain Coty's appeal and remand for the commissioner to make further detailed findings of fact on the existing record.

The employee broke his leg while working in a trench on September 18, 1973, in the course of his employment as a laborer for the town of Millinocket. Coty was paid

compensation for total disability until February 11, 1974, when he returned to work. On April 7, 1975, Coty filed with the commission a petition for further compensation, claiming that he had become totally incapacitated for work as of July 17, 1974. His assertion of total incapacity notwithstanding, Coty continued to work for the town until August 15, 1975, when he was discharged.

After receiving testimony from Dr. Dale C. Bouton, an orthopedic surgeon, Peter Pikelis, the Millinocket public works director, and Coty himself, the commissioner on December 30, 1975, "dismissed" [1] the employee's petition. The Law Court sustained Coty's appeal from that dismissal and remanded the case for further factfinding on the basis of such supplementary record as the parties might request or the commission might find necessary. *Coty v. Town of Millinocket*, Me., 391 A.2d 826 (1978) (*Coty I*).[2]

Following that remand the commissioner in 1979 heard additional testimony by Dr. Bouton and also received the testimony of Dr. Philip R. Kimball. On that augmented record, the commissioner once again "dismissed" the employee's petition on December 31, 1979. On February 8, 1980, after the employee's request for findings of fact under 39 M.R.S.A. § 99 (Supp.1980), the commissioner entered a brief supplemental decree. Through the intermediate mechanism of a *pro forma* decree of the Superior Court, Coty has appealed to this court from the December 31, 1979, decree as so amplified.

Before this court the employee has conceded that, because of his failure at any time to present evidence to the commissioner as to lost time from work or any related financial consequences for any period prior to January 1, 1975, the commissioner had no basis on which to award even partial compensation before that date. The employee continues to claim, however, that he should be paid compensation for partial incapacity from January 1, 1975, through August 15, 1975, the day he was discharged by the town, and total compensation from August 15, 1975, through December 30, 1975, the date of the commissioner's original decree.[3] Thus we here are asked to evaluate Coty's entitlement, if any, to further compensation only for the limited period of time from January 1 to December 30, 1975.

In the second and third paragraphs of his December 31, 1979, decree, the commissioner stated:

From a review of the records as supplemented by the additional medical testimony, we find that although the function of Mr. Coty's injured knee may have been impaired between July 17, 1974, the date which the parties agreed a decree might be issued suspending weekly benefit payments, and August 15, 1975, when Mr. Coty was laid off work by the Town of Millinocket *there is not sufficient convincing evidence to conclude that Mr. Coty suffered any significant wage loss during that period.*

As to the period from August 15, 1975, to December 30, 1975, ... *[w]e see no evidence to indicate that Mr. Coty's earning capacity was any different that [sic] it was between July 1974, and August 15, 1975.*

(Emphasis added) Following that decree, counsel for the employee requested, as he was entitled to do under 39 M.R.S.A. § 99, that the commissioner make findings of fact on the two issues raised in the portions of the decree that are emphasized in the quotation above. The February 8, 1980, supplemental decree contained a single

---

1. A disposition on the merits adverse to the petitioner is better denominated a denial. *White v. Forster Mfg. Co., Inc.*, Me., 421 A.2d 55, 56 n. 1 (1980); *Wing v. A. C. Electric Corp.*, Me., 408 A.2d 1006, 1007 n. 1 (1979).

2. *See Coty I*, 391 A.2d at §27–28, for a detailed recitation of the procedural steps prior to the appeal there reported.

3. In an entirely separate proceeding, but one also arising out of the 1973 injury to his leg, Coty sought further workers' compensation for a period commencing subsequent to December 30, 1975. The commission denied him that relief and this court affirmed. *Coty v. Town of Millinocket*, Me., 393 A.2d 156 (1978) (*Coty II*).

finding of fact and a single conclusion of law, as follows:

*FACTS*:

During the year 1974, Mr. Cott's [sic] average weekly earnings were about $110.00 per week and during the year 1975, his average weekly earnings were about $112.00.

*CONCLUSION*:

We infer from the facts stated above that Mr. Coty's earning capacity during the year 1975 was not impaired.

■ It is black–letter law that the commissioner's findings of fact are final if supported by competent evidence and reasonable inferences that may be drawn therefrom. *Kennard v. Eastern Maine Medical Center*, Me., 421 A.2d 54 (1980). In the case at bar, however, the commissioner made no findings of fact in his December 31, 1979, decree, and the single factual finding that he subsequently made following the employee's very specific request simply did not respond to that request. The commissioner's findings are plainly inadequate to enable any appellate court to review his decision or, indeed, to understand with any clarity at all what he meant to decide.[4]

■ In the second paragraph of his December 31, 1979, decree, the commissioner concluded that Coty "suffered [no] significant wage loss" between July 17, 1974, and August 15, 1975. He then found that Coty's "earning capacity" was no different in the period between August 15 and December 30, 1975, than it had been in the immediately preceding period. In his February 8, 1980, supplemental decree, the commissioner concluded that because Coty received slightly higher average weekly earnings during his 1975 employment than he did in 1974, his earning capacity had not

been impaired during 1975. His use in both decrees of the terms "wage loss" or "earnings" and "earning capacity" strongly suggests that the commissioner may have considered them to be equivalent. If he did so, his action was not in keeping with this court's frequent and clear articulation of the rule that while actual post–injury earnings are strong evidence of earning capacity under 39 M.R.S.A. § 55 (1978), the two concepts are not identical. *Severy v. S. D. Warren Co.*, Me., 402 A.2d 53, 55 (1979); *Gullifer v. Granite Paving Co.*, Me., 383 A.2d 47, 49 (1978). As we said in *Severy*:

[A]lthough actual post–injury earnings constitute strong evidence of earning capacity, *Fecteau v. Rich Vale Construction, Inc.*, Me., 349 A.2d 162, 165 (1975), they are not to be accorded a dispositive effect. . . . [T]he mere fact, standing alone, that the employee is earning the same after the injury as he did before will not bar an award for partial disability. *See* 2 A. Larson, Workmen's Compensation Law § 57.21 (1976). In determining present earning capacity, evidence of actual wages is a useful indicator, not a talisman.

402 A.2d at 55.

■ We are left with no alternative but to vacate the commissioner's latest decision against the employee and to remand again to the commission. On this second remand, the commissioner should make *full* findings of fact upon the existing record and then reevaluate Coty's claims, for compensation for partial incapacity during the period from January 1 to August 15, 1975, and for benefits for total incapacity from August 15 to December 30, 1975, in light of those new findings and in accordance with this opinion.[5]

---

4. The employer argues that the commissioner did not believe the testimony either of Coty or of his witnesses. While evaluation of the credibility of witnesses is, of course, in the sole province of the commissioner, *Willette v. Statler Tissue Corp.*, Me., 331 A.2d 365, 370 (1975), there is nothing in this record to show that the commissioner either did or did not rely on such an evaluation in dismissing the employee's petition.

5. We note that in his February 8, 1980, supplemental decree, the commissioner, in making his findings on Coty's work capacity, compared the calendar periods 1974 and 1975 without distinguishing between the two periods within 1975 for which the employee claims benefits for partial and total incapacity, respectively. We emphasize that on remand the commissioner should separately state his conclusions and their basis for each of those two periods.

Finally, in order to assist the commissioner in his task on remand, both parties should submit to him prior to his decision proposed findings of fact. Any commissioner to whom a section 99 request is made should permit or even require counsel, particularly counsel for the prevailing party, to submit proposed findings for him to consider in responding to that request. Only thus can the commissioner obtain the full benefit of the adversary system in carrying out the responsibilities imposed upon him by section 99.

The entry will be:

Appeal sustained.

Judgment of the Superior Court vacated; remanded to the Workers' Compensation Commission with directions to make further findings of fact and conclusions of law on the basis of the present record and in accordance with the opinion herein.

Further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550, together with his reasonable out–of–pocket expenses for this appeal.

All concurring.