**Delphis LEVESQUE**

v.

**Arnold H. SHOREY and/or Employer's Liability Assurance Corp.**

Supreme Judicial Court of Maine.

Jan. 28, 1972.

Rudolph T. Pelletier, Madawaska, for plaintiff.

Mitchell & Ballou, by John W. Ballou, Bangor, for defendant.

Before DUFRESNE, C. J., and WEB-
BER, WEATHERBEE, POMEROY,
WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

This is an appeal from a pro forma de-
cree of the Superior Court under 39 M.R.
S.A. § 103 incorporating as it must the de-
cree of the Industrial Accident Commission
rendered on March 22, 1971.

On October 30, 1968 Delphis Levesque
while employed by Arnold H. Shorey sus-
tained a compensable injury when a tree
shrub fell and struck him on the head and
left shoulder. The parties entered into an
agreement, approved on January 22, 1969
by the Commissioner of Labor and Indus-
try pursuant to 39 M.R.S.A. § 94, which
provided for the payment of workmen's
compensation benefits at the rate of $65.17
per week while the incapacity for work re-
sulting from the injury was total. 39 M.
R.S.A. § 54.

On July 8, 1969 the employer and insur-
ance carrier (the appellants) filed a peti-
tion for review of incapacity pursuant to
39 M.R.S.A. § 100 on the ground that Le-
vesque was no longer totally incapacitated
for work. Hearing on the petition was
held on October 9, 1969. John F. McGinn,
an orthopedic surgeon practicing in Bangor
testified respecting his examination of the
claimant on July 15, 1969 and stated as his
opinion that "Mr. Levesque might gradual-
ly start *light work* as of the date of exami-
nation, but that he would be disabled par-
tially at least until September, and maybe
longer." (Emphasis ours).. The plaintiff
at that hearing testified that he did work
part time from July 10, 1969 to September
3, 1969 and was thereafter working full
time for the Province of Quebec. His em-
ployment with the provincial government
consisted of doing light work such as
weighing sand trucks or acting as a sur-
veyor's helper. The first specifically in-
volved looking at the scale, writing the
weight in figures upon a slip and deliver-
ing the slip to the truck driver. The sec-
ond merely meant that he would hold the
tape while the surveyor would perform his
duties. His governmental pay brought in
$92.00 per week, whereas his pre-accident
weekly remuneration as a woodcutter and
wood skidder operator was $136.66. The
Commissioner's finding dated October 28,
1969 reads as follows:

"On the basis of the evidence we find
that Mr. Levesque's total disability ended
as of July 10, 1969, and that from that
date until September 3, 1969 [he had
worked a total of 91 hours at the rate of
$2.37 an hour], *he possessed 15% of his
pre-accident work capacity.* By agree-
ment of counsel his average weekly wage
at the time of his injury in October
1968, was $136.66. Therefore during the
period of partial disability from July 20,
1969, to September 3, 1969, he would still
be entitled to the maximum of $65.17 a
week for partial disability.

"Now that Mr. Levesque has been ac-
tually earning $92.00 a week since Sep-
tember 3, 1969, he is of course, entitled
to ⅔ of the difference between what he
is now earning and what he was able to
earn when injured. The difference is
$44.66, and ⅔ thereof is $29.76. Ac-
cordingly, the employer is ordered to pay
Mr. Levesque $29.76 a week for partial
disability from September 3, 1969, until
such time as this decree is changed."
(Emphasis supplied.)

The claimant's employment by the Prov-
ince of Quebec in weighing sand trucks
and helping in surveying in connection
with road construction work ended on De-
cember 8, 1970 when, due to winter weath-
er conditions, such road construction work
ceased. While being paid compensation
under the decree of October 28, 1969 and
pursuant to 39 M.R.S.A. § 100, Mr. Le-
vesque filed a petition for review of his in-
capacity due to his injury on the ground
that such incapacity had increased since
the date of the last hearing and decree.
The Commissioner heard the parties on
February 11, 1971 at which time Dr. John

A. Woodcock testified for the employee. After stating the results of his examination of the claimant, Dr. Woodcock concluded and gave it as his opinion that Mr. Levesque was permanently limited as to the type of work he could do, testifying in part:

> "I did not feel that he would get back to woods work. A light job such as he had surveying would be ideal, I would feel, I would relate his impairment as present in the entire body and it would seem to me there would be approximately 30% or perhaps a little bit more. I did not see the need for any orthopedic surgery."

Mr. Levesque testified that, after the loss of his employment by the provincial government, he looked for work within his limited capacity but there was none available. He did say that light work as he had been doing would probably be available to him in the month of May when road construction would resume.

In this posture of the evidence by decree dated March 22, 1971, the Commissioner, after reciting Dr. Woodcock's medical conclusions, found—

> "Mr. Levesque's incapacity for work is no greater than it was on October 29, 1969 when the last decree was issued.

> "Mr. Levesque, however, has not worked since Dec. 8, 1970, when the job he had weighing sand trucks was ended because the construction season ended.

> "He testified that he has sought other light work in the area where he lives and that he applied at the employment office but has not been able to find work within his capacity. He testified that he is still unable to work with a chain saw or to do other heavy woods work. The medical testimony confirms this.

> "We find that due to his injury, Mr. Levesque cannot find work within his limited capacity and that he is entitled to compensation for total disability from

December 8, 1970 to the present at the rate of $65.17 a week and until such time as this decree is modified."

It is undisputed that Levesque's loss of available light work was not due to his own fault, to any subsequent illness or accident, nor to any general business depression. The appellants contend that, since the employee's physical condition was unchanged from the time of the decree of October 28, 1969 and his loss of employment was due to the cessation of road construction during the winter months, such decrease in availability of light work should not be considered as increasing his incapacity for work within the meaning of the Workmen's Compensation Act. In this, the appellants are mistaken.

Conceding the evidence supports the Commissioner in his findings of facts, they agree that the claimant is a man of very limited education with no vocational skills or training. Levesque had worked in the woods as a wood cutter and wood skidder from the age of seventeen to the time of his accident. Thereafter his capacity for work was limited to light work which he was performing when his employment ceased with the closing-out of road construction for the winter season. The appellants do not question his good faith in seeking light work within his limited capacity and the fact he was unable to find any.

The issue on appeal is whether the Commissioner erred as a matter of law in finding that claimant's incapacity had increased from partial to total while at the same time finding no change in claimant's physical disability which admittedly was not total.

We agree that the decree as worded is at least confusing. But it is obvious what the Commissioner intended to say. We interpret the decree to mean that the claimant's physical disability (he possessed 15% of his pre-accident work capacity) had not changed since the prior decree of partial incapacity, but, due to the lack of available

employment within his limited capacity for work, claimant's partial incapacity for work as previously determined had increased to total.

■ The basic purpose of the Workmen's Compensation Act is to provide compensation *for loss of earning capacity* from actual or legally presumed incapacity to work arising from accidents' in industry. "In compensation, unlike tort, the only injuries compensated for are those which produce disability and thereby presumably affect earning power." Larson, Workmen's Compensation, § 2.40. See, Cook v. Colby College, et al., 1959, 155 Me. 306, 310, 154 A.2d 169.

Our statute specifically provides for compensation while the *incapacity for work* resulting from the injury is total (39 M.R.S.A. § 54) or partial (39 M.R.S.A. § 55). In Ray's Case, 1922, 122 Me. 108, 110, 119 A. 191, this Court interpreted the statutory phrase "incapacity for work" as including not merely want of physical ability to work but also lack of opportunity to work due to the injury. It cited with approval the definition given in Honnold on Workmen's Compensation, Vol. 1, Page 599 to the effect that "[i]ncapacity for work means loss of earning power as a workman in consequence of the injury whether the loss manifests itself in inability to perform such work as may be obtainable or inability to secure work to do."

■ While we agree that loss of earning power due to the workman's fault, to an accident or illness following an industrial injury or occasioned by general business depression is not compensable under the Act, inability to get work because of the injury is compensable. In *Ray's Case*, supra, Ray received compensation for total incapacity following an industrial accident, but, after finding a job as stagecoach driver he entered into an agreement for compensation on the basis of partial incapacity. Discharged from his stagecoach job and unable to secure equally remunerative employment, Ray petitioned for increased compensation on the ground that the lessening of his earning power based upon the unavailability of jobs in the market area was due to his injury and manifested an increase of his partial incapacity for work within the meaning of the Act. This Court agreed with him and allowed increased compensation for increased partial incapacity for work, even though it was admitted that his physical capacity was unchanged from the previous decree (*agreement*). *Ray's Case* controls the decision in the instant case, since the inability to find any work within the limited physical capacity of Levesque was due to his industrial injury. The total unavailability of work in the market area arising upon Levesque's loss of his light work for the provincial government, although due to the temporary cessation of road construction work for the winter, brought about a resulting total incapacity for work, in the same manner as in *Ray's Case*, supra, the loss of the stagecoach job caused an increase in the employee's earning power and partial incapacity arising from a general disinclination of employers to hire maimed or crippled men when sound men were available.

The plaintiff's burden of proof to entitle him to compensation for total incapacity cast upon him the duty to furnish evidence that he had used reasonable efforts to obtain the kind of work for which the physicians had found him capable and that he had failed *either by reason of his injury or because there was no such work available in the area in which he lived.* Pelletier v. Pinette, 1969, Me., 259 A.2d 25 at 26. Levesque satisfied this burden and submitted evidence, which the trier of the facts believed, that his failure to find "light work" following the discontinuance of his employment by the Province of Quebec was attributable to his injury and thus was proof of actual total incapacity for work, although from a medical standpoint his physical disability was only partial.

■ Where an employee has a partial disability from a medical point of view and

has factually demonstrated his ability to do some type of work of a light nature within the tolerance of his physical condition, such as in the instant case, by weighing trucks or being a surveyor's helper, if he loses such employment for reasons other than his own fault, subsequent accident or illness or general business depression and he proves that he is unable with the use of diligent efforts to find any available work within his physical ability in or near the community in which he lives, he then becomes totally incapacitated for work within the meaning of the Act. His impairment of earning capacity due to his injury, upon such a change in circumstances, passes from partial to total for purposes of compensation benefits. See, Hermon v. Pugh, 1947, 272 App.Div. 985, 72 N.Y.S.2d 834; Blackmon v. Pantex Manufacturing Corporation, 1963, 95 R.I. 389, 187 A.2d 541.

In Jeter v. Cudahy Packing Co., 1967, 4 Ariz.App. 571, 422 P.2d 402, claimant's industrial injury caused her a 10% functional disability for which she received partial compensation benefits. She was given a lighter job on her return to work. When she was discharged in a reorganization of the Company's departments in an efficiency move and her job was phased out, she applied for work at several places unsuccessfully and, due to her original injury, her subsequent earnings were limited to light housekeeping work for her daughters and babysitting jobs. Her petition for an award of total incapacity, following payment of compensation for partial incapacity, was reactivated on reversal of the Commission.

■ The appellants further contend that it was error on the part of the Commissioner to conclude that Levesque was totally incapacitated in the face of his testimony that he was able to build a canoe, valued at $75, which he planned to sell.

"Evidence that claimant has been able to earn occasional wages or perform certain kinds of gainful work does not necessarily rule out a finding of total dis-

ability nor require that it be reduced to partial." Larson's Workmen's Compensation Law, § 57.51.

"[A]n employee may be totally disabled for all practical purposes and yet be able to obtain trivial occasional employment under rare conditions at small remuneration, and * * * the status of the employee in such respect remains unaffected thereby unless claimant is able to get, hold, or do any substantial amount of remunerative work, either in his previous occupation or any other established field of employment for which he is fitted." Brockhaus v. L. E. Ball Construction Co., 1966, 180 Neb. 737, 145 N.W.2d 341.

In McCrae v. Brandt Aero Service, 1969, 283 Minn. 483, 168 N.W.2d 683, the Court ruled that an employee's work in designing and later supervising the construction of his home after the accident did not preclude a finding of permanent and total disability in the absence of a showing that the employee was so actively engaged in building and supervising that it can be said he was employable. The record is devoid of any evidence that Levesque's possible remunerative activity in constructing one canoe for purposes of sale demonstrated any probable dependability with which he could sell his services in a competitive labor market. In his attempt to earn a few dollars to lessen the effects of his industrial accident, Levesque had no desire to enter the ranks of the self-employed and remove himself from the labor market. He remained at all times ready and available for work within his limited physical ability. He has sustained the burden of proof that no such employment was available in or near the community in which he lives.

■ The term "total incapacity" means such incapacity for work that the employee is unable to perform any services, either because of his physical inability to perform in a medical and/or neurological sense or by reason of unavailability, in or near the community in which he lives, of the type

of work commensurate with his limited capacity, and ability to perform services which are so limited in quality, dependability, or quantity that a reasonable stable market for them does not exist, will not detract from his status of total disability. See, M. A. Hartnett, Inc. v. Coleman, 1967, Del., 226 A.2d 910.

The Commissioner's finding that

"due to his injury, Mr. Levesque cannot find work within his limited capacity and that he is entitled to compensation for total disability from December 8, 1970 to the present at the rate of $65.17 a week and until such time as this decree is modified"

is not erroneous in law, and thus the entry must be.

Appeal denied.

Ordered that an allowance of $350.00 to cover fees and expenses of counsel, plus cost of the record, be paid by the appellants to the appellee.

All Justices concurring.