Otis BOWEN

v.

**MAPLEWOOD PACKING COMPANY and/or**
**Liberty Mutual Insurance Company.**

Supreme Judicial Court of Maine.

Nov. 23, 1976.

Romanow & Dostie by Richard M. Dostie, F. Frederick Romanow, Jr., Belfast, for plaintiff.

Rudman, Rudman & Carter by John M. Wallach, Gene Carter, Richard J. Relyea, III, Bangor, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE*, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

On January 21, 1974, appellant Otis Bowen (Bowen) suffered a trimaleolar fracture of his ankle in the course of his employment for Maplewood Packing Company, Inc. (Maplewood). The parties entered into a compensation agreement on February 4, 1974 pursuant to which Bowen received payment for total incapacity from the date of the accident. On May 21, 1974 Maplewood and its insurance carrier, Liberty Mutual (Liberty), filed a petition for review of incapacity. A hearing was held on October 8, 1974. Finding that appellant had recovered 50% of his pre-accident capacity, the Commissioner ordered compensation for partial disability. From a pro forma judgment of the Superior Court affirming the decision of the Commission, the employee appeals. We sustain the appeal.

The only witness at the hearing besides the claimant was Sheldon Brotman, M.D., a general surgeon. Dr. Brotman testified that the ankle had solidly healed at the time of the hearing, and that in his opinion the claimant could return to work immediately, although not on a whole-day basis, if he were to obtain a sedentary job or one in which he would be able to sit and rest every half to three-quarters of an hour. He surmised that the employee could pursue his former work, which involved climbing up and down ladders, for short periods of time, with rests every fifteen or twenty minutes.

Bowen testified that he had attempted to find employment with numerous employers in the Belfast and Searsport areas, specifically mentioning at least fourteen different places where he had applied. From them he learned, in sum, that there was no work available for a man with his injury; employers stated that to hire him would be a risk, that they were just not hiring, that the available job would entail too much standing up, or a combination of these reasons. Appellant also visited the Maine Employment Security Commission where he was told that location of a job for him was highly improbable in view of his ninth

---

* WEATHERBEE, J., sat at oral argument and participated in conference but died before this opinion was adopted.

grade education. Bowen testified that he had applied everywhere in his community where he believed there might be a job which he could handle.

■ We must bear in mind and have repeatedly recognized that on appeal from a decree of the Commissioner, his findings of fact are final if they are supported by competent evidence and reasonable inferences which may be drawn therefrom. 39 M.R.S.A. § 99; *Crosby v. Grand View Nursing Home*, Me., 290 A.2d 375 (1972); *Soucy v. Fraser Paper Ltd.*, Me., 267 A.2d 919 (1970). Yet it is equally true that when the Commissioner is in error as to the law controlling his decision, an appellate court may substitute its understanding of the law for that of the Commissioner. *Jacobsky v. D'Alfonso & Sons, Inc.*, Me., 358 A.2d 511 (1976). We recently observed that "[w]hether an employee is totally or partially incapacitated for work is a question of fact upon which the finding of the Commissioner is final, provided there is some credible competent evidence to support it . . . [b]ut his decisions on question of fact must be guided by legal principles and will be set aside on appeal if based in any degree on misapprehension of undoubted facts." *Dailey v. Pinecap, Inc.*, Me., 321 A.2d 492, 495 (1974). Our examination of the entire record in this case convinces us that the Commissioner's decision to grant partial compensation was based on an erroneous application of legal principles firmly embodied in Maine jurisprudence.

■ Maplewood and Liberty, as the moving parties, carried the burden of showing that the employee's physical condition had improved to such an extent that some work capacity had been recovered. *Connelly's Case*, 122 Me. 289, 119 A. 664 (1923). Appellees have clearly met this initial burden with the evidence they submitted to that effect in the form of Dr. Brotman's medical opinion. The burden now shifts to the employee who must come forward with evidence that he remains, as of the date of the hearing, "totally disabled."

■ Under the Maine Workmen's Compensation Law, total incapacity to engage in remunerative employment may arise in two different ways. An employee may be totally disabled in the medical sense, *i.e.*, he may lack actual physical ability to perform any substantial work at all. On the other hand, a disability may sometimes be classified as total even though the injury itself, from a medical standpoint, is only partial. *See generally* 2A. Larson, Workmen's Compensation Law § 57.51 (1976). In such a case, the employee is nevertheless totally disabled "by reason of unavailability, in or near the community in which he lives, of the type of work commensurate with his limited capacity, and ability to perform services which are so limited in quality, dependability, or quantity that a reasonable stable market for them does not exist." *Levesque v. Shorey*, Me., 286 A.2d 606, 610–11 (1972); *see also Overlock v. Eastern Fine Paper, Inc.*, 314 A.2d 56 (1974). It is unquestionable, then, that according to Maine law, inability to obtain gainful employment traceable to a partial compensable injury may be as effective in establishing total disability as is complete physical inability to perform any work. *Ray's Case*, 122 Me. 108, 119 A. 191 (1922).

■ Bowen concedes that the medical evidence in the pending case clearly would not warrant a finding of total disability in the purely medical sense. Rather he is attempting to prove "total" disability based on a partial physical injury conjoined with unavailability in his community of any work suitable for him. A bipartite burden has been judicially evolved and must be satisfied before this second basis for total incapacity will be operative. The employee must come forward with evidence, if any

there was, that he has engaged in a good faith effort to obtain work within the tolerance of his physical condition, and then he must demonstrate that he failed in his effort, either because employers in his community would not hire people with such a limited capacity to do the type of work within his tolerance, or because there was no reasonably stable market in his community for that restricted work of which he was capable. *Fecteau v. Rich Vale Construction, Inc.*, Me., 349 A.2d 162 (1975); *Martel v. United States Gypsum Company*, Me., 329 A.2d 392 (1974); *Pelletier v. Pinette*, Me., 259 A.2d 25 (1969).[1]

The Commissioner did not precisely state his finding as to the first aspect of the burden, *i.e.*, he does not say that a good faith effort has or has not been undertaken.[2] He noted in his decision, however, that Bowen had "made numerous inquiries of prospective employers." Nowhere in the decision does the Commissioner imply that Bowen was anything but cooperative in seeking a gainful and suitable occupation. This is readily distinguishable from the situation in *Bolduc v. Pioneer Plastics Corp.*, 302 A.2d 577 (1973) in which the Commissioner, as part of his decree, urged the employee to seek active employment. We find nothing in the instant case which could lead us to conclude either that Bowen had not made a reasonable effort or that the Commissioner so believed.

We recognized in *Martel, supra,* that the issue of the reasonableness of efforts is a mixed question of law and fact, which is reviewable on appeal by this Court, although within the area of the expertise of the Commissioner. *See also Jacobsky, supra.* In assessing reasonableness of a work search, several factors are to be considered including the frequency and persistence of the effort and the type and appropriateness of the employment sought. The record indicates that Bowen, a man with neither vocational training nor a high school education, had sought employment at every place in his community where he believed employment for someone with his disability might be attainable. The reasonableness test does not require him to look for work outside of the general area of his residence. 2 Larson, *supra* at § 57.61.

Furthermore, Bowen himself imposed no limits on his own employability, thus distinguishing his situation from that in *Pelchat v. Portland Box Co., Inc.*, 155 Me. 226, 153 A.2d 615 (1959) in which the claimant, out of exaggerated concern for keeping his foot immobile, limited his search to those jobs in which he would be able to keep his leg in an elevated position. We affirmed the Commissioner's finding in *Pelchat* that the employee's incapacity had been diminished, his failure to find work being attributable to the narrowness of his pursuit. In *Bolduc, supra,* our Court affirmed the Commissioner's finding

---

1. We note in passing that Maine precedent casts no burden on the employer either to offer the employee work or to prove that some particular work is available in the community which the employee could perform. *Martel v. United States Gypsum Company*, Me., 329 A.2d 392 (1974); *Connelly's Case*, 122 Me. 289, 119 A. 664 (1923); *contra, Duff v. Chrysler Corp.*, Del.Super., 301 A.2d 309 (1972).

2. In *Martel, supra,* we remanded for clarification when the Commissioner similarly failed to make a clear finding as to whether he believed the work search effort had been reasonable. The record in that case con-

tained some testimony which could be viewed as disputing the reasonableness of the effort. We concluded that the failure to make sufficient findings of fact, *in combination with* a misapplication by the Commissioner of the burden of proof necessitated a remand for further findings of fact. *See also Foster v. Bath Iron Works Corporation*, Me., 317 A. 2d 11 (1974). Inasmuch as we find nothing in the record before us that controverts the reasonableness of the effort, and since there was no improper thrusting on the employer of a burden to show available work, we do not find it necessary to remand for clarification in the instant case.

of only partial incapacity, noting that the employee's quest for work was limited to visits to the Unemployment Office and three business establishments in the Lewiston-Auburn area. Partial incapacity was similarly affirmed in *Jacobsky, supra,* in which the employee's efforts consisted of three visits to the local Maine Employment Security Office and an interview with a vocational counselor, but no direct contact on his part with employers. In our most recent work search case, *Oliver v. Wyandotte Industries Corp.,* Me., 360 A.2d 144 (1976), we reversed the Commissioner's finding of total incapacity when petitioner had done nothing but answer one newspaper advertisement and apply directly to one business concern. In contrast to these cases, Bowen, in addition to having visited the Maine Employment Security Commission, specifically named fourteen employers to whom he had personally applied. We believe that the Commissioner would concur with our own assessment of Bowen's efforts to secure employment as not only reasonable but diligent; the good faith effort component of the burden of proof has clearly been satisfied.

■ Our difficulty with the Commissioner's decision arises in connection with the second component of the employee's burden, that which requires him to prove that he failed in his search *either* because employers in his community would not hire disabled persons to do the type of work which was available and of which he was capable, *or* because there was no market in his community for such restricted type of work. *Overlock, supra; Levesque, supra.* The Commissioner refused to award Bowen total compensation, finding that Bowen's "lack of success in obtaining work is not entirely because of his limitations resulting from the injury. In some instances work was not available to him for other reasons." Indeed, under the first alternative above, Bowen might have to show that there was work available in the community

within his physical tolerance, and that each employer refused to hire him solely because of his disability. Were this Bowen's only means of satisfying his burden, we might be forced to conclude that he had failed to show that his lack of work was completely due to "a general disinclination on the part of persons requiring help to employ maimed or crippled men when sound men are available." *Ray's Case, supra,* 122 Me. at 111, 119 A. at 192. However, there is another path available to Bowen, one which the Commissioner has apparently discounted, scilicet, Bowen could satisfy the second facet of his burden by showing that no reasonably stable market existed in his community for the kind of work which, in consequence of the accident, he was able to perform. In acknowledging only the path not taken by Bowen, and failing to recognize Bowen's success via this alternative route, the Commissioner has committed an error of law. Instead of looking at the total picture, he improperly focused in on certain employers' refusal to hire Bowen for "other reasons." In *Overlock, supra,* we said:

. . . we are not concerned with the actual reason that any single given employer refused to hire the claimant, but rather our interest is in whether the claimant presented sufficient evidence of a *pattern of employment experiences* that the Commissioner could make a reasonable inference that a stable market for the employment of an individual with the claimant's physical incapacities did not exist. 314 A.2d at 59 (emphasis added).

■ It is of course true that a number of employers may have declined to employ Bowen for reasons totally unrelated to his injury. The Commissioner apparently believed that a finding of total compensation

is perforce improper whenever this is so. We believe this to be an unreasonable conclusion, based on an erroneous application of the legal principles as firmly established in our several work search cases. An employee is *not* required to show that in each case he would have been hired, were it not for his injury. After showing his good faith effort, (which we dare say the Commissioner would not dispute in Bowen's case) the claimant can satisfy his remaining burden by showing the lack of a stable market in his community for a person of his capacities. The record before us demonstrates unquestionably and as a matter of law that there was no stable market in the Belfast-Searsport area for one with Bowen's disability. The Commissioner's finding that

> "Mr. *Brotman*[3] has recovered 50% of his pre-accident capacity, and compensation for partial disability at the rate of $35.29 a week is hereby ordered until this decree is modified" (emphasis in original)

is erroneous in law, and thus the entry must be,

Appeal sustained.

Pro forma decree of the Superior Court vacated.

Case remanded to the Industrial Accident Commission for entry of a Commission decree adjudicating petitioner totally incapacitated from October 30, 1974.

It is further ordered that the appellees pay to the appellant an allowance of $550.-00 for his counsel fees, plus the actual reasonable out-of-pocket expenses for this appeal.

All Justices concurring.

3. The Commissioner obviously intended to say "Mr. Bowen."