Michael THERIAULT

v.

WALSH CONSTRUCTION COMPANY
and Lumbermens Mutual
Casualty Company.

Supreme Judicial Court of Maine.

Aug. 2, 1978.

McTeague, Higbee & Tierney by Maurice A. Libner (orally), Patrick N. McTeague, Brunswick, for plaintiff.

Richardson, Hildreth, Tyler & Troubh by Robert L. Hazard (orally), Ronald D. Russell, Portland, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

This workmen's compensation case is on appeal by the employer from the *pro forma* decree of the Superior Court, Franklin County, affirming the decision of the Industrial Accident Commission, which granted the employee's petition for further compensation for total incapacity. The issues argued on appeal are (1) whether the Commission's decision lacked an essential factual finding, namely the date from which further compensation was to run; and (2) whether the Commission's finding of total incapacity due to inability to find work was based on some competent evidence and application of the correct legal standard.

We sustain the appeal on the first issue. While we find an error in the Commission's discussion of the second issue, we do not disagree with the result and. we therefore deny the appeal on that issue.

On November 6, 1975, the Appellee, Michael Theriault, a resident of Berlin, New Hampshire, received an injury to his cervical spine which arose out of and in the course of his employment as a journeyman carpenter with Appellant Walsh Construction Company. By agreement, he was paid compensation for total incapacity from November 11, 1975 through January 2, 1976. At that time, he returned to work for Walsh, and continued to work for them at a Jay, Maine, job site through March of that year. When the job ended, he was laid off.

Subsequently, Mr. Theriault obtained five or six weeks work as a millwright and crane operator for another construction company at a job site in New Hampshire. When that job ended, he was again laid off.

Shortly thereafter, sometime in May, 1976, Mr. Theriault found work as a millwright with a third company which was doing construction work in Bucksport, Maine. In August, 1976, he began to experience discomfort in his cervical spine area. On the advice of an orthopedic physician, he was able to transfer from the heavy work he was doing to heliarc welding, still with the same employer.

On December 17, 1976, Mr. Theriault was laid off by this employer. On December 22, 1976, he again saw his orthopedic surgeon, who advised him to restrict himself to work which did not involve lifting more than thirty pounds.

On December 29, 1976, he filed a petition for further compensation against Appellant Walsh. He sought compensation for total incapacity.

At the hearing before the Commission, Mr. Theriault testified that he was ready and willing to accept work within his physical tolerance. He also testified about his unsuccessful attempts to find work within that tolerance. He had contacted his union business agent. Although he was available for work within his craft almost anywhere in Maine or New Hampshire, and although others with less seniority were working, he had been unsuccessful in finding work through his union. In addition, he had registered with the unemployment office in Berlin, and had approached three potential employers in Berlin for work as a sprayer, welder and mechanic. While the garage where Mr. Theriault had applied for light mechanical work might have had an opening, any such work would have involved the kind of heavy lifting he was unable to do.

Upon these facts, the Commission found that the employee was totally incapacitated, and ordered that he should be compensated accordingly.

The employer attacks the Commission's finding of total incapacity on several grounds. The essence of its argument is that the Commission either used the wrong legal standard to determine total incapacity, or the factual findings supporting the decision are not supported by competent evidence, or both.

The first aspect of this argument is that it is unclear whether the finding of total incapacity is based on total *medical* incapacity, or partial medical incapacity coupled with an inability to find suitable work, which constitutes total incapacity within the Act under the principles of *Bowen v. Maplewood Packing Co.*, Me., 366 A.2d 1116 (1976).

■ The Commission's decision did not specifically state the theory of total incapacity upon which it relied. However, in the context of this case, we conclude that the Commission reached its finding of total incapacity based on partial medical incapacity and the inability to find work. We have often had occasion to remind the Commission that express findings facilitate appellate review. *E. g., Ugarek v. St. Regis Paper Co.*, Me., 383 A.2d 1092, 1093 n. 2 (1978). Nevertheless, we need not apply that requirement in an overly technical manner. *Cf. Jacobs v. Boomer*, Me., 267 A.2d 376, 379 (1970).

Here, given the fact that the employee had worked for almost a year, given his testimony that he was ready and willing to work within his physical tolerance, and given the Commission's discussion of the employee's efforts to carry out his obligations to seek employment, the Commission's deci-

sion can only be read as being based upon the *Bowen* theory of incapacity.

We therefore review the decision on that basis.

■ Although the employer asserts, and we agree, that the employee had some work capacity, it does not directly argue the absence of competent evidence to support a finding of partial incapacity. In any event, we conclude that there is competent evidence to support such a finding, and the Commission's decision in that regard is final. *Jacobsky v. C. D'Alfonso & Sons, Inc.,* Me., 358 A.2d 511 (1976).

The employer goes on, however, to argue that the Commission misconceived the legal standard by viewing the issue as "whether, *as a carpenter,* he could carry out his duties under his limited capacity." [emphasis added]. In the employer's view, this was an overly lenient standard of incapacity, improperly focusing on the employee's capacity to do his previous job instead of on his ability to earn a wage.

■ We agree that the Commission misstated the issue. Compensation is awarded for loss of capacity to earn, not for incapacity to do the same kind of work as before the injury. *Beaulieu's Case,* 132 Me. 410, 413, 171 A. 696, 698 (1934); *Milton's Case,* 122 Me. 437, 443, 120 A. 533, 535 (1923). Thus, it would have been error had the Commission based its finding of incapacity on the fact that the employee could not work as a carpenter.[1]

■ However, our examination of the facts actually found by the Commission, as measured by the correct legal standard, convinces us that there was no error in the Commission's determination of total incapacity. To be entitled to compensation for total incapacity when only partially disabled in the medical sense, the employee must show

.   .   .   that he has engaged in a good faith effort to obtain work within the

tolerance of his physical condition, and .   .   . that he failed in his effort, either because employers in his community would not hire people with such a limited capacity to do the type of work within his tolerance, or because there was no reasonably stable market in his community for that restricted work of which he was capable.

*Bowen v. Maplewood Packing Co.,* Me., 366 A.2d 1116, 1119 (1976).

■ Under this standard, the question of whether Mr. Theriault could work as a carpenter is superfluous. Once there is a finding of partial incapacity, coupled with a showing of inability to find work, the inquiry narrows to the nature of efforts by the employee to find any work and the reasons why employers would not hire him.

Even if we assume, without deciding, that one who limits his attempts at employment to a particular line of work has not made a good faith effort, the employer's cause is not helped here. The Commission's finding "that the employee has carried out his obligations to seek employment under the circumstances of the case" could not have been based on evidence that the employee had limited his efforts to only carpentry work, because there was no such evidence. Rather, the record affirmatively shows that he did not so limit himself.

■ The question of a good-faith effort to find work is a mixed question of fact and law. Findings that actual efforts were made to obtain work are factual. The evaluation of the reasonableness of those efforts, however, is a mixture of law and fact requiring us to examine the reasonableness and legality of the Commission's ultimate conclusion with deference to its relevant expertise. *Gaddis v. Georgia-Pacific Corp.,* Me., 382 A.2d 1045 (1978).

■ Clearly, the finding that the employee met his obligation to seek work encompasses a finding of actual good faith efforts

1. The employer also contends there is no competent evidence to support a finding that the employee was physically unable to work as a carpenter. However, once a finding of partial physical incapacity is made, the issue becomes not whether he could *do* work as a carpenter but whether he could *find* work—as a carpenter or otherwise.

to find work. While we again emphasize our preference for specific findings, the Commission's decision cannot reasonably be read any other way. There is competent evidence in the record to support such a finding, and the Commission's determination is therefore conclusive. It remains to us, however, to determine the reasonableness and legality of its ultimate conclusion.

Inexplicably, the Commission's decision did not mention the employee's attempts to find work by approaching three specific employers in his home town, and by registering with his local unemployment office. Instead, the Commission appeared to base its conclusion solely on the employee's efforts to find work through his union.

▮ We must criticize this approach. This was evidence on a material issue as to which the Commission should have made a finding accepting or rejecting it. Nevertheless, on the rather unique facts of this case, the Commission's ultimate conclusion is not incorrect. Two factors lead us to this result: (1) the employee's union encompassed a wide variety of work rather than one narrow field of labor; and (2) the work available to the employee through his union was not limited to one geographical area, but apparently encompassed most of New Hampshire and Maine, and the employee was willing to travel almost anywhere within that wide area to accept suitable work.

On the first point, there was evidence that potential job opportunities within the union's jurisdiction included crane operator, welder, carpenter and millwright. Indeed, the employee had done all four of these jobs after his injury, and it was only the heavy millwright work at the Bucksport job site that had caused him difficulty.

Secondly, the wide geographical area over which Mr. Theriault's union apparently had jurisdiction, coupled with his willingness to work almost anywhere within that area (corroborated by the fact that he previously had accepted work at three geo-

graphically diverse job sites) far surpasses the *Bowen* requirement that the employee engage in a good faith effort to find work *within his community.*

While the confluence of these circumstances does not fit precisely within the previously enunciated parameters of *Bowen* we conclude that the underlying facts found by the Commission, coupled with our own review of the reasonableness of the Commission's ultimate finding, dictates that we should uphold the Commission on this issue, notwithstanding the shortcomings of its articulated approach.[2]

It should be clear from the foregoing discussion that the line between the presence or absence of a necessary finding of fact is not always a sharp one. We confront the same problem in the second issue argued on this appeal and, on this issue, we reach a different conclusion.

The Commission's decision, dated January 26, 1977, concludes by stating that the employee "is totally incapacitated and should be paid compensation . . . ." The decision does not specify the date from which compensation is to run.

Normally, compensation is paid from the date of injury, since that is the date incapacity commences. Here, however, the date of injury was November 6, 1975, and, after being paid compensation through January 2, 1976, the employee worked for almost a year before being laid off on December 17, 1976.

The employee argues that the date of incapacity must necessarily be December 17. He contends that this is the date when he became unemployed while partially disabled in the medical sense and thus, citing *Levesque v. Shorey,* Me., 286 A.2d 606, 611 (1972), he argues that this must be the starting date of his incapacity. Alternatively, he argues that it is at most a clerical error.

We disagree.

▮ A determination of when incapacity begins is a necessary finding of fact

---

2. Our decision is not, however, intended to be an endorsement of an injured employee's look-

ing solely to his union for employment, except within the specific fact pattern of this case.

which we are unable to supply. *See Cayton v. National Sea Products*, Me., 373 A.2d 1229 (1977). The employee's reliance on *Levesque v. Shorey* is misplaced. There, the Commission fixed the date from which compensation was to run, which also happened to be the day the employee was laid off, and we held that it was not wrong as a matter of law. Before we can address that question, the Commission must fix the date of incapacity, something which was done ir *Levesque* but not here.

It does not follow that December 17, 1976, is the only date upon which incapacity could have commenced. The employee, a resident of Berlin, New Hampshire, was laid off in Bucksport, Maine on that date. It was not until December 22, when he saw his physician, that the limitation against lifting more than 30 pounds was imposed. The date when he notified his union of the layoff is not in the record, so there is nothing in the present record upon which to conclude that the employee would have even been available for work on that date in some other part of the state had the union had a job referral.

Similarly, the failure to make such an essential finding of fact cannot fairly be described as a clerical error within the meaning of 39 M.R.S.A. § 99–A. *See Moore v. Langelier*, Me., 380 A.2d 199 (1977).

We must therefore remand to the Commission for its determination of the date from which compensation for total incapacity is to run.

The entry is:

Appeal denied in part and sustained in part.

*Pro forma* decree of the Superior Court vacated; remanded to the Workers' Compensation Commission [3] for further proceedings consistent with the opinion herein.

Further ordered that Appellant pay to Appellee $550 for his counsel fees plus his actual reasonable out-of-pocket expenses of this appeal.

DELAHANTY, J., did not sit.

3. The name of the Industrial Accident Commission was changed to Workers' Compensation Commission by P.L. 1978, ch. 612.