Georgette SNOW, Plaintiff,

v.

BORDEN, INC., Defendant.

Civ. No. 91-420-P-C.

United States District Court,
D. Maine.

Oct. 6, 1992.

Philip Moss, Portland, Me., for plaintiff.

Francis Jackson, Portland, Me., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

In this six-count action, Plaintiff seeks various benefits from Defendant under the Employee Retirement Income Security Act of 1974 ["ERISA"], 29 U.S.C. § 1002 *et seq.*, and 26 M.R.S.A. § 625–B and 626 (1988), governing severance pay and cessation of employment. Defendant has filed a motion for summary judgment on all counts. Plaintiff has filed a motion for partial summary judgment on counts I–V.

A motion for summary judgment must be granted if:

[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The Court of Appeals for the First Circuit has recently articulated the legal standard to be applied in deciding motions for summary judgment:

[T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett,* 477 U.S. 317, 325[, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson,* 477 U.S. at 248 [106 S.Ct. at 2510]; *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limits differing versions of the truth which a factfinder must resolve at an ensuing trial.' *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989). As the Supreme court has said:

[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson,* 477 U.S. at 249–59 [106 S.Ct. at 2510–15].

*Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989).

The Court now looks to the supporting papers on the motions and the citations to materials of evidentiary quality in support of the issues which the Court must consider as a basis for its action upon the motions.

## FACTS

The Court finds the following facts to be undisputed on the record made on the motions. Plaintiff worked as an hourly nonunion employee for Defendant from 1979 until April 9, 1990, at its plant in Pine Point, Maine. On April 9, 1990, Plaintiff injured her back at work. Plaintiff never

returned to work for Defendant after this date. She received worker's compensation reimbursement from April 10, 1990 until February 24, 1992 when she settled her claim for a lump sum payment under the Worker's Compensation Act.

Defendant maintains various benefit plans including the "Employment and Benefits Upon Termination Plan"[1] ("Termination Plan"), which covers severance pay, and the "Total Family Protection Plan" ("Protection Plan"), which explains available medical and disability benefits. Plaintiff was within the class of employees covered by both plans and both plans are governed by ERISA. A summary plan description ("SPD"), explaining the benefits available under the Termination Plan and the appropriate procedures for receiving such benefits, was distributed to all employees.[2]

In January of 1990, Defendant announced to its Pine Point plant employees that it would be closing that plant later that year. At that time, Defendant distributed a one-page document entitled "Employee Retention Plan" ("Retention Plan") to employees at the plant. The first paragraph of the Employee Retention Plan states:

> The following is a summary of payments and benefits offered in order to encourage you to remain with [Borden's] until we are prepared to terminate operations in Pine Point. In order to receive these, you must continue to perform satisfactorily, continue working until released by the company, and sign the company's standard release form.

The Plan then explains specific benefits available for those employees who stay on, including a stay bonus, severance pay, transfer opportunities, medical/dental extension, and earned unused vacation. The Retention Plan gives no further explanation of how to accept the benefits contained in this document.

In February of 1990, Catherine Carol DeMarco, Defendant's Employee Relations Manager, met with Plaintiff to answer questions she had concerning the Retention Plan. Plaintiff never negotiated with the Defendant with respect to the Retention Plan. Plaintiff did not ask that Defendant change any of the terms or conditions upon which the benefits in the Retention Plan were based, nor did she ask for more favorable treatment than that offered in the Plan.

On December 28, 1990, Defendant sent Plaintiff a letter denying her long-term disability benefits as of October 15, 1990. The letter instructed Plaintiff that if she wished to appeal, she had sixty days in which to do so, and "the request for review must include medical documentation (not previously sent) from [her] attending physician substantiating total disability beyond the claim termination date." Plaintiff's attorney sent a letter dated February 22, 1991, appealing the denial of Plaintiff's benefits and enclosing a long-term disability claim form signed by Plaintiff's doctor on November 6, 1990, certifying her continued inability to work.

By letter dated March 14, 1992, Defendant wrote to Plaintiff's attorney and explained that if Plaintiff wanted to appeal the denial of her long-term disability claim, she should submit "additional medical documentation ... along with a written request for an appeal to this termination." Neither Plaintiff nor her attorney ever replied to Defendant's March 14th letter, nor did either furnish additional medical documentation or further appeal the denial of benefits.

Regarding her general medical benefits, Plaintiff resubmitted her outstanding medical bills for payment by Defendant on June 25, 1992. Some of these bills were paid by Defendant's insurance company on June 29 and 30, 1992.

Plaintiff has alleged claims for severance pay, vacation pay, and medical benefits un-

---

1. As amended on February 10, 1986.

2. Plaintiff signed a form acknowledging receipt of her SPD in February 1986. Additionally, the SPD was reproduced in the employee handbook, which Plaintiff also acknowledged receiving in July 1986.

der the Retention Plan,[3] and long-term disability benefits under the Termination Plan.

## COUNT I

Plaintiff argues that the Retention Plan circulated by Borden on or about February 1, 1990, is a welfare benefit plan and as such is governed by ERISA.[4] This Court will first examine whether the Retention Plan creates any duty on Borden's part to furnish the benefits described therein under ERISA.

### A. ERISA APPLICATION

ERISA provides a cause of action under federal law to any participant or beneficiary of a benefit plan to recover benefits due under the plan, if the plan falls within the statute. 29 U.S.C. § 1132(a)(1)(B). The statute covers pension plans, 29 U.S.C. § 1002(2)(A), and welfare benefit plans, 29 U.S.C. § 1002(1). Welfare benefit plans include any plan, fund or program established or maintained by an employer for the purpose of providing certain benefits to its employees or their beneficiaries.[5] In this action, the parties disagree as to whether or not the Retention Plan constitutes a "plan, fund or program" or a summary plan description ("SPD")[6] and thus as to whether or not the benefits described within are governed by ERISA.

■ It is well established that a "plan, fund or program" under ERISA is established if, from the surrounding circumstances, a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits. *Williams v. Wright,* 927 F.2d 1540, 1543 (11th Cir.1991) *quoting Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982). Under this analysis, whether or not the Retention Plan constitutes an ERISA plan requires a "reasonable person" inquiry, hence it is a question of fact for the factfinder and, on this record, is an outstanding genuine issue of material fact.

### B. PLAINTIFF'S ELIGIBILITY

■ However, even if the disputed facts were resolved such that a factfinder could find that the Retention Plan constituted a "plan, fund or program" under ERISA, Plaintiff appears ineligible for the benefits enumerated in the Plan as a matter of law.

The first paragraph of the Retention Plan explicitly limits benefit eligibility:

> The following is a summary of payments and benefits offered in order to encourage you to remain with [Borden's] until we are prepared to terminate operations in Pine Point. *In order to receive these, you must continue to perform satisfactorily, continue working until released by the company, and sign this company's standard release form* (emphasis added).

Plaintiff argues that these words do not render her ineligible for the benefits because receiving worker's compensation constitutes continued "employment" by the company. Defendant counters that the words "continue working" mean actively continuing to work and are not interchangeable with the status of being employed. Defendant further asserts that its

---

**3.** Plaintiff never asserted a claim for severance pay based upon the procedures dictated by the Termination Plan.

**4.** The Court notes that Plaintiff failed to plead ERISA's application for Counts I or III, although Plaintiff strenuously argued ERISA's application in both instances in supporting memoranda.

**5.** 29 U.S.C. § 1002(1) reads:
The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services ...

**6.** The summary plan description is the statutorily established means of informing participants of the terms of the plan and its benefits in more accessible language than is typically used in the actual plan documents themselves. 29 U.S.C. § 1022.

clear purpose in constructing the Retention Plan was to encourage employees to actively continue working at the plant in order for the plant to sustain its productivity until its doors closed.

Plaintiff's argument is a tenuous one and seems to work against the logic of worker's compensation principles. The basic purpose of the Maine Workers' Compensation Act, 39 M.R.S.A. § 1 *et seq.*, is to provide compensation for the loss of one's earning capacity from actual or legally presumed *incapacity to work* arising from accidents in industry. *Levesque v. Shorey*, 286 A.2d 606, 608 (Me.1972) (emphasis added). The statute presumes that the employee cannot "continue working" and is thus in need of compensation to reimburse him or her for that lost income. The fact that the employee continues his or her status as "employed" by the employer while receiving workers' compensation payments does not mean that the employee is considered to be "working" for that employer.

Despite the fact that Plaintiff received workers' compensation payments from Defendant from April 9, 1990 through February of 1992, and during that time was considered "employed by" Defendant, she never went back *to work for* Defendant. Her employment relationship with Defendant while receiving workers' compensation cannot now be construed by Plaintiff to constitute "continued working" status as required for benefit eligibility under the Retention Plan.

Therefore, as a matter of law, Plaintiff *would not be covered by the Retention Plan* and could not assert claims based upon it. On that basis, the Court will grant summary judgment for Defendants on Count I.

## COUNT II

Next, Plaintiff asserts a statutory right to vacation pay. Under 26 M.R.S.A. § 626 (1988), Plaintiff argues that she is owed 5.775 days of vacation accrued during her employment from January 1, 1990 through April 9, 1990. Plaintiff's claim for 5.775 vacation days must be denied, however, because under Maine law, a company's vacation policy trumps any state statutory right to such reimbursement.

In *Rowell v. Jones & Vining, Inc.*, 524 A.2d 1208 (Me.1987), the Law Court held that conditions for earning vacation and determining the amount of vacation earned are governed by the terms of employment, not by section 626. Thus, Plaintiff's claim for vacation days must be examined in light of the Borden Vacation Policy. Section IV, A, of the Borden Vacation Policy clearly states that an employee accumulates vacation only "for each *full* calendar month the employee works" (emphasis added). Therefore, Plaintiff accumulated vacation only in the months of January, February, and March, at the rate of 1.25 days per month, for a total of 3.75 days for 1990.

Borden's Vacation Policy is similarly explicit regarding payment for unused vacation time in case of absence from work, including disability. The Policy states that:

> Vacation is earned in the same calendar year that the vacation must be taken.... Employees on an extended leave of absence of more than 30 consecutive days in any calendar year will have that year's vacation amount reduced by one twelfth for each full 30 days' absence. An extended leave of absence includes time off while on salary continuance, short term disability, long term disability, workers' compensation, personal leave or any other absence.

> Vacations may not be "carried over" beyond the calendar year. Vacations not taken in a calendar year *will be forfeited.*

> It is *not permissible* to pay salary in lieu of vacation. The purpose of the vacation plan is to grant time off with pay, not double compensation in lieu thereof (emphasis in original).

In the instant case, Plaintiff erroneously seeks financial reimbursement for unused vacation pay when the policy explicitly states that paying salary in lieu of vacation pay is impermissible.

The Court notes that Borden's Vacation Policy does provide that:

> vacation pay may be paid for the time between the expiration of an employee's

Salary Continuance or Short Term Disability benefits and the commencement of eligibility for Long Term Disability benefits whether or not enrolled, provided the employee remains disabled, requests the vacation pay in writing and has earned the vacation.

However, Plaintiff has not asserted any facts to support, nor attempted to argue, that she is seeking her vacation pay for the time between her salary continuance, or short-term disability and her long-term disability, nor that she followed the procedures outlined above.

Therefore, Plaintiff is seeking financial reimbursement for her unused 1990 vacation time which is explicitly disallowed under Borden's Vacation Policy. Since Plaintiff has failed satisfactorily to produce evidence on all the elements of her claim under 26 M.R.S.A. § 626 and Borden's Vacation Policy, summary judgment is mandated for Defendant on Count II.

## COUNT III

Plaintiff has similarly failed to produce evidence on all elements of her claim for severance pay under the Retention Plan. Plaintiff failed to prove her eligibility for *any* of the benefits explained in the Retention Plan, including severance pay, because she did not "continue working" for Defendant until she was released by the company, as explicitly required by the Plan. Thus, summary judgment for Defendants must be granted on Count III for the same reasons set forth in Count I regarding Plaintiff's ineligibility for benefits under the Retention Plan.

## COUNT IV

Plaintiff argues in the alternative that she is owed severance pay under 26 M.R.S.A. § 625–B(2) (1988) which provides in part:

any employer who relocates or terminates [any industrial or commercial facility ... which employs or has employed at any time in the preceding 12–month period 100 or more persons] shall be liable to his employees for severance pay at the rate of one week's pay for each year of employment by the employee in that establishment.

Defendants argue that ERISA pre-empts any application of state law because Borden already has a severance pay policy (the Termination Plan) included as part of its employee welfare benefit plan under which Plaintiff is covered.

■ The ERISA statute itself states that the Act shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) [29 U.S.C. § 1003(a)] and not exempt under section 4(b) [29 U.S.C. § 1003(b)]. 29 U.S.C. § 1144(a). The phrase "relate to" is "given its broad common-sense meaning, such that a state law 'relates to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Bellino v. Schlumberger Technologies, Inc.*, 753 F.Supp. 391, 392 (D.Me.1990) *quoting Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (citations omitted).

■ Under established case law, it is clear that the severance pay plan outlined in Borden's Employment and Benefits Upon Termination Plan is an "employee welfare benefit plan" within the meaning of ERISA.[7] Because Plaintiff's state law claim for severance pay under 26 M.R.S.A. § 625–B "relates to" that employee welfare plan, Plaintiff's state law claim for severance pay is explicitly pre-empted by ERISA. *See Bellino*, 753 F.Supp. at 392.

Furthermore, even if Maine state law did apply, § 625–B(3)(B) states that "there shall be no liability for severance pay to an eligible employee if that employee is covered by an express contract providing for severance pay." Borden's Termination Plan applies to Plaintiff and contractually establishes the company's terms and discre-

7. *See Bellino*, 753 F.Supp. at 392; *Massachusetts v. Morash*, 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989); *Holland v. Burlington Industries, Inc.*, 772 F.2d 1140 (4th Cir.1985) *aff'd sub nom. Brooks v. Burlington Industries, Inc.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986); *Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320 (2d Cir.1985), *aff'd sub nom. Roberts v. Burlington Industries, Inc.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986).

tion regarding severance pay. Specifically, Section C entitled "Pay Upon Termination" explains the eligibility requirements, conditions of payment, method of payment, re-employment, notice pay, oral representations, and payments and funding guidelines. Borden does not guarantee severance pay; rather, it states that it will consider such a benefit in the appropriate circumstances and that each case will be examined individually.[8]

■ Thus, even if Maine's Severance Pay Statute were not preempted by ERISA in this case, the existence of Borden's Termination Plan would render the state severance pay statute inapplicable to Plaintiff. Summary judgment is, therefore, appropriate for Defendants on Count IV under ERISA and 26 M.R.S.A. § 626.

### COUNT V

In Count V of the Complaint, Plaintiff claims she has been denied medical benefits under Defendant's Protection Plan, an ERISA-governed benefit plan. However, in her Memorandum in Support of the Motion for Partial Summary Judgment, Plaintiff relies on the workers' compensation settlement of February 1992 as the basis for her claim. The workers' compensation settlement was neither pleaded in the Complaint nor appended to the Memorandum for the Court's reference. If Plaintiff had wanted this Court to analyze this claim under the workers' compensation agree-

ment reached with Defendant, Plaintiff should have amended her complaint and furnished the Court with a copy of said agreement. Thus, the Court will proceed to analyze Count V under ERISA only, as pleaded in the Complaint.

■ There are various factual disputes in this claim, primarily surrounding whether any of the medical bills submitted by Plaintiff for payment by Defendant remain outstanding. According to the documents submitted to this Court, outstanding bills may remain.[9] This is a genuine issue of material fact that must be decided at trial.

However, even if the parties agreed that certain medical bills remain to be paid, Plaintiff faces a serious legal hurdle in order to survive summary judgment. Defendant charges that Plaintiff has not exhausted her administrative remedies under the Protection Plan and that her claim under ERISA is, therefore, premature.

29 U.S.C. § 1133 states that every employee benefit plan shall:

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review

---

**8.** Borden's Employment and Benefits Upon Termination Plan, section C(1) states:

In cases of involuntary termination of employees which results as a consequence of the discontinuance of all or part of a Profit Center, department or other unit, and through no fault of the employee, and in other appropriate circumstances as determined by the Company, notice and/or termination pay will be considered by the Company. Where paid, the amount of termination payments usually will vary with the length of each employee's service and may also vary based on other equitable factors also determined by the Company. Such payments are always considered on a case-by-case basis and the payment of such amounts is entirely discretionary in each and every case. Notice or termination pay are in no way contractual obligations of the Company and are not earned or matters of right.

**9.** The Court compared the Defendant's July 2, 1992 affidavits of Lisa Dawn Phillips (Defen-

dant's Associate Manager of Health and Welfare Claims Administration) and Steven Massicotte (Claims Supervisor for Defendant's workers' compensation insurer, CIGNA Property & Casualty Co.) with Plaintiff's June 25, 1992 affidavit. Based on the documents provided to the Court, the following bills appear to remain outstanding: Dr. Charles Parakis, $359.00; Maine Neurology, P.A., $588.00; Diagnostic Radiology Group, P.A., $195.00; and LeVesque & Hart, D.O., P.A., $606.60.

According to the affidavit submitted by Stephen Massicotte, CIGNA made payment for many of Plaintiff's claims on June 29 and 30, 1992. Both Dr. Charles Parakis and Maine Neurology were paid on that date, $249.00 and $793.28, respectively. It is unclear whether these amounts should be deducted from the outstanding bills or whether they were amounts owed in addition to the outstanding bills.

by the appropriate named fiduciary of the decision denying the claim.

These administrative claim resolution procedures were apparently intended by Congress to help reduce the number of frivolous lawsuits under this chapter, to promote the consistent treatment of claims for benefits, to provide a nonadversarial method of claims settlement and to minimize the costs of claims settlement for all concerned. *See Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir.1980). ERISA does not, by its terms, mandate exhaustion of these required administrative remedies prior to instituting suits for denial of benefits under the Act. However, courts have, in an effort to promote the goals intended by Congress when the Act was drafted, applied the exhaustion doctrine to such cases before allowing plaintiffs to sue under ERISA. *See, e.g., United Paperworkers Int'l Union, Local 14, etc. v. International Paper Co.*, 777 F.Supp. 1010, 1014 (D.Me.1991); *Springer v. Wal–Mart Associates Group Health Plan*, 908 F.2d 897, 899 (11th Cir.1990); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir.1990); *Makar v. Health Care Corp.*, 872 F.2d 80, 82–83 (4th Cir.1989); *Drinkwater v. Metropolitan Life Insurance Co.*, 846 F.2d 821, 826 (1st Cir.), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988).

The procedures as set forth in the Protection Plan SPD are as follows:

To submit a claim, obtain a form from your local personnel office or the Borden Benefits Administration Department ... The employee statement on the claim form must be completed. Then the form—along with the original itemized bills—is to be returned to the Borden Benefits Administration Department at the following address:

Borden, Inc.
Administrative Services Unit
P.O. Box 189
Columbus, OH 43216

. . . . .

Should your claim be denied, you have 60 days from the date you received such notice (or the date on which your appeal may be considered denied by failure of the Plan Administrator to act) to appeal to the Benefits Review Committee, c/o Borden, Inc., 22nd Floor, 180 E. Broad Street, Columbus, OH 43215. Your appeal must be in writing and contain the reasons why you believe your claim should have been approved. You may attach documents or materials in support of your appeal. The Benefits Review Committee has 60 days to make a decision on your appeal. If you have not received a decision by the end of this period, you should treat your appeal as having been denied ...

You may be asked to obtain necessary additional information ... The Plan Administrator then has 60 days to make a decision on your appeal ... If you have not received a decision by the end of this period, you should treat the claim as having been denied.

On June 25, 1992, Plaintiff resubmitted her medical bills for payment by Defendant. Thus, Plaintiff is still in the process of exhausting the administrative process. If those resubmitted claims are denied, she must follow the procedures as outlined above before approaching this Court for relief under ERISA.

Traditional exhaustion principles allow an exception for instances "when resort to the administrative route is futile or the remedy inadequate." *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 826 (1st Cir.1988); *Amato*, 618 F.2d at 568 *quoting Winterberger v. General Teamsters Auto Truck Drivers and Helpers Local Union 162*, 558 F.2d 923, 925 (9th Cir. 1977). For this exception to apply, however, those in pursuit must show that the administrative route is futile or the remedy inadequate. "A blanket assertion, unsupported by any facts, is insufficient to call this exception into play." *Id.*

In *Drinkwater*, the First Circuit found that Metropolitan's plan provided the required review procedure and that Drinkwater produced no evidence to show, or even raise the point, that resort to this review would have been futile or that the administrative remedy sought would have been inadequate. *Id.* Similarly, in the case at bar, Defendant's plan provides the required

review procedure, and Plaintiff presents no evidence or arguments to show that resort to the Defendant's review procedure would be futile or inadequate.

Plaintiff in this case cannot properly be excused from the exhaustion requirement under ERISA. Therefore, despite the genuine issues of material fact regarding the amount of the outstanding bills, Plaintiff's claim for medical benefits under ERISA must be dismissed without prejudice as premature.

## COUNT VI

Plaintiff's final claim is for long-term disability benefits to which she argues she is entitled under Borden's Protection Plan. It is undisputed that the Defendant's long-term disability benefits plan is an employee welfare benefit plan within the meaning of ERISA.[10] Defendant again argues that Plaintiff has failed to exhaust her administrative remedies.

The appeals procedure outlined in the Borden Total Family Protection Plan Section 2.18 is as follows:

> Any Covered Employee or Covered Dependent who feels aggrieved by the amount of benefit paid, the basis on which benefits are paid, or the failure to pay any benefit pursuant to the terms of the Plan, may file an appeal with the Benefits Review Committee within sixty (60) days of the notification of the final determination by the Plan Administrator, pursuant to the procedures which it establishes for the furtherance of its work. It is expressly understood that such an appeal is the sole and exclusive means for adjustment of such claims. It is further understood that no arbitrator under a collective bargaining agreement shall have any authority to interpret, add to or delete from any term of this Plan, or to render any decision binding upon this Plan, or to issue an award directing payment or non-payment of any claim or benefit, without the specific advance

written authorization of the Benefits Committee.

In response to Plaintiff's letter dated February 22, 1991, appealing the denial of Plaintiff's long-term disability benefits, Defendant notified Plaintiff by mail on March 14, 1991 that:

> if [Plaintiff] intends to appeal the termination of disability benefits, additional medical documentation, *not previously submitted,* should be submitted along with a written request for an appeal of this termination. It will be presented at the next scheduled Benefit Review Committee meeting (emphasis added).

Plaintiff did not respond to the March letter, and *no further appeal or medical documentation was submitted.* This Court believes that it was at this point that Plaintiff failed to exhaust her administrative remedies. The appeals policy clearly gives the Review Committee some discretion regarding their procedure,[11] and Plaintiff alleges no facts showing that she responded *in any way* to the Defendant's March letter.

Plaintiff failed to allege that resort to Defendant's review procedure would be futile or inadequate, thus she cannot properly be excused from the exhaustion requirement under ERISA.[12] Therefore, Plaintiff's claim for long-term disability benefits under ERISA must also be dismissed as premature.

Accordingly, it is ORDERED that Defendant's Motion for Summary Judgment be, and is hereby, GRANTED on Counts I–IV of the Complaint. Counts V and VI are DISMISSED without prejudice. Plaintiff's Motion for Partial Summary Judgment is hereby DENIED.

So ORDERED.

---

**10.** *See* paragraph 22 of the Amended Complaint and paragraph 22 of Defendant's Answer to Amended Complaint.

**11.** "Any covered employee ... may file an appeal within sixty days with the Review Committee ... *pursuant to the procedures which it es-*

*tablishes for the furtherance of its work* (emphasis added).

**12.** *Drinkwater,* 846 F.2d at 826; *Amato,* 618 F.2d at 568.